(February 3, 1906.)

## SHOSHONE COUNTY v. PROFITT.

[84 Pac. 712.]

CONSTITUTIONAL REQUIREMENTS — ANNEXATION OF A PART OF ONE COUNTY TO ANOTHER—POWER OF LEGISLATURE—COUNTY INDEBTEDNESS—RATABLE PROPORTION OF INDEBTEDNESS.

1. Under the requirements of that portion of section 3 of article 18 of the state constitution which provides that ''when any part of a county is stricken off and attached to another county, the part stricken off shall be held to pay its ratable proportion of all then existing liabilities of the county from which it is taken,'' the detached territory continues liable for its ratable proportion of the indebtedness existing against the mother county at the time of the segregation.

2. Section 3 of article 18 of the constitution is as much a prohibition against the legislature imposing the ratable proportion of indebtedness on the county to which the detached territory is annexed as it is a prohibition against leaving the entire indebtedness to be paid by the old county from which the portion is stricken off.

3. The constitution having provided that one particular portion of territory shall pay a certain portion of indebtedness has thereby excluded and exempted all other territory from paying such indebtedness.

4. The provisions of an act approved March 10, 1903, submitting the question of the annexation of a part of Shoshone county to Nez Perce county to a vote of the electors within the territory to be annexed, and to apportion the debt of Shoshone county between the county of Shoshone and the segregated portion thereof, and authorizing and directing the board of commissioners of Nez Perce county to cause warrants to be drawn by the auditor of that county in favor of Shoshone county for the amount ascertained to be due by the accountants provided for in the act. *Held*, valid and constitutional.

5. The act of March 10, 1903, providing for the annexation of a portion of Shoshone county to Nez Perce county, should be read and construed in the light of and in connection with the existing laws in relation to the same subject matter, and is not in conflict with sections 3605 and 3606 of the Revised Statutes, as amended by the act of March 8, 1895.

6. By the provisions of section 3606 as amended by act of March 8, 1895, it is made the duty of the board of commissioners of a county from which a portion of its territory is stricken off to annually certify to the assessor and tax collector of the county

to which such territory has been annexed the rate of tax levied by the board of commissioners for the purpose of paying the interest and providing a sinking fund in payment of the outstanding indebtedness of the county at the time of the segregation of territory, and it is thereupon made the duty of the assessor of the county to which such territory is annexed to collect, within the segregated territory, the tax so levied and certified in the same manner as other taxes are by him collected.

7. The provisions of section 4 of the act of March 10, 1903, requiring the commissioners of Nez Perce county to issue their warrants in favor of Shoshone county for the amount found due from the segregated territory to the parent county is only an evidence of the results of the investigation, adjustment and settlement as to the *pro rata* proportion of indebtedness to be borne by the segregated territory, and such warrants will only be payable as money shall be received by the treasurer of Nez Perce county from taxes collected from the segregated territory in accordance with the provisions of section 3606 of the Revised Statutes, as amended by act of March 8, 1895.

(Syllabus by the court.)

Sullivan, J., dissenting.

ORIGINAL application for writ of mandate to certain officers of Nez Perce county requiring them to cause to be issued and delivered to Shoshone county the warrants of Nez Perce county in compliance with the provisions of the act approved March 10, 1903, providing for the striking off of a portion of the territory of Shoshone county and annexing the same to Nez Perce county. Writ granted.

James E. Gyde, Prosecuting Attorney, of Shoshone County, for Plaintiff.

Subject to constitutional limitation, the power of the legislature over counties is unlimited. The leading case upon this question which is cited fully in one-half of the score of cases examined by the writer of this brief is *Laramie Co. v. Albany Co.*, 92 U. S. 307, 23 L. ed. 552. As to the power of the legislature to divide counties, change the boundaries thereof by annexing a portion of one county to another, or to abolish counties at will and distribute the property and indebtedness of the same in such manner as it deems wise, the court is respectfully referred to very exhaustive notes to the follow-

ing case: *Mount Hope Cemetery v. City of Boston,* 158
Mass. 509, 35 Am. St. Rep. 515, and note, 33 N. E.
695. Especial attention is called to the note in 35 Am.
St. Rep. on page 539, under the head, "Control Over
Property by Dividing or Destroying Municipalities"; also
very exhaustive note to case of *State v. Clevenger,* 20
Am. St. Rep. 676. These two cases are complete briefs in
themselves upon the power of the legislature in these
matters. The legislature has seen fit to say how this portion
of the indebtedness of Shoshone county which has been cer-
tified by the accountants shall be paid, and it is not for the
courts to say that the legislature has not done complete jus-
tice in the matter. It is a legislative question, not a judicial
one. (*Tulare Co. v. Kings Co.,* 117 Cal. 195, 49 Pac. 8; *Los
Angeles Co. v. Orange Co.,* 97 Cal. 329, 32 Pac. 316; *Whitney
v. Inhabitants of Stow,* 111 Mass. 368; *Pulaski Co. v. Judge,*
37 Ark. 339; *Burrough of Dunmore's Appeal,* 52 Pa. St. 374.)
In the case of *Whitney v. Inhabitants of Stow,* 111 Mass. 368,
the question arose as to the power of the legislature to place
the debt of school districts upon a town upon abolishing the
districts. The court on page 372 says: "The doubt suggested
at the argument as to the constitutionality of the statute of
1869, chapter 423, section 6, appears to the court to be with-
out foundation. The power of the legislature, at its discre-
tion, to abolish school districts or other districts, established
by its authority for special municipal purposes, is un-
doubted." (*Blackstone v. Taft,* 4 Gray, 250; *Weymouth &
Brantree Fire Districts v. County Commissioners,* 108 Mass.
142.) Where a county is divided and property and debts
are to be apportioned, political considerations are involved,
and the legislature must directly or indirectly pass upon them.
(Cooley on Taxation, 3d ed., p. 1304.) If the legislature has
not made provision for the proper adjustment of this indebt-
edness in conformity with the provisions of this section of
our constitution, it can do so in the future, and it is not for
the courts to assume that the legislature will not do its duty
in the matter. (*Beals v. Amador County,* 35 Cal. 624; *People
v. Alameda County,* 26 Cal. 642; *Napa Valley R. R. Co. v.*

*Napa Co.,* 30 Cal. 435; *Creighton v. San Francisco,* 42 Cal. 446; 1 Dillon on Municipal Corporations, 4th ed., sec. 189; *Perry County v. Conway Co.,* 52 Ark. 430, 12 S. W. 877, 6 L. R. A. 665; *New Orleans v. Clark,* 95 U. S. 644, 24 L. ed. 521; *Johnson v. San Diego,* 109 Cal. 468, 42 Pac. 249, 30 L. R. A. 178.) It is further contended that the act is unconstitutional because if Nez Perce county is now compelled to pay a part of Shoshone county's debt, there is no constitutional method whereby the territory annexed can ever be held or compelled to pay this debt. Assuming there is no way, that would be no reason for holding the act void. It is within the power of the legislature to impose terms upon Nez Perce county upon its receiving practically half of the territory of Shoshone county, and Nez Perce county will not be heard to complain, although she may not have had any voice in the matter except through her representatives in the legislature which enacted the law. (*Laramie County v. Albany County, supra; Mount Pleasant v. Beckwith,* 100 U. S. 514, 25 L. ed. 699; *Lowe v. Hardy;* 7 Utah, 368, 26 Pac. 982; *In re House Bill,* 9 Colo. 639, 21 Pac. 478; *Perry County v. Conway County,* 52 Ark. 430, 12 S. W. 877, 6 L. R. A. 665; *New Orleans v. Clerk,* 95 U. S. 644, 24 L. ed. 521.) The general provisions of the constitution relative to taxation are not applicable to extraordinary cases like the division of a county. (*Ottawa County v. Nelson,* 19 Kan. 234, 27 Am. Rep. 101; *City Council v. Board of Commissioners,* 33 Colo. 1, 77 Pac. 858, and cases cited.) It is contended that it is not due process of law to compel Nez Perce county to pay a part of the indebtedness of Shoshone county. The courts have uniformly held that it is within the power of the legislature upon the annexation of a part of the territory of one municipal corporation to another that the indebtedness of the county from which the territory has been detached might be apportioned between the two municipalities. (*Lowe v. Hardy,* 7 Utah, 368, 26 Pac. 982; *Mount Pleasant v. Beckwith,* 100 U. S. 514, 25 L. ed. 699; *In re House Bill,* 9 Colo. 639, 21 Pac. 478; 1 Dillon on Municipal Corporations, 4th ed., sec. 63, also sec. 189; *Rawson v. Spencer,* 113 Mass. 40; *Burrough*

*of Dunmore's Appeal,* 52 Pa. St. 374; *Pulaski Co. v. Judge,* 37 Ark. 338; *New Orleans v. Clark,* 95 U. S. 644, 24 L. ed. 521; *Perry County v. Conway County,* 52 Ark. 430, 12 S. W. 877.)

B. S. Crow, Prosecuting Attorney for Nez Perce County, and Benjamin F. Tweedy, for Defendant.

Section 3, article 18 of the state constitution limits and restricts the power of the legislature, and all that the legislature can do is to continue the original liability of the territory annexed. This constitutional provision deprives the legislature of the power, if it ever existed, to make Nez Perce county liable for the annexed territory's debt. (*People v. Potter,* 47 N. Y. 375; *Beardstown v. City of Virginia,* 76 Ill. 34. See Cooley's Constitutional Limitations, 7th ed., 100, 102; *Denn v. Reid,* 10 Pet. (U. S.) 524, 9 L. ed. 519.) We can cite the court to decisions of courts where statutes like our constitutional provision have been construed. The construction given by the courts to such statutes is a true and just criterion for the construction and application of said section 3, article 18 of our constitution. (*Trinity County v. Polk County,* 58 Tex. 321; 7 Am. & Eng. Ency. of Law, 2d ed., p. 918, and notes; *Blout Co. v. Landon Co.,* 8 Baxt. (67 Tenn.) 74; *Sinton v. Cartee County,* 23 Fed. 535.) The collection of taxes under an unconstitutional law is not due process of law. (*Anderson v. Hill,* 54 Mich. 477, 20 N. W. 549.) The legislature has attempted to make a contract between Shoshone county and Nez Perce county; it has not continued the liability of the annexed territory. The legislature cannot make contracts between private parties. (*Taylor v. Porter,* 4 Hill, 143, 40 Am. Dec. 274; *Culbertson v. Coleman,* 47 Wis. 193, 2 N. W. 125; *Wilkenson v. Leland,* 2 Pet. 657, 7 L. ed. 553.) Therefore there is no binding contract between Nez Perce county and Shoshone county whereby Nez Perce county is to pay the debts of the annexed territory. Laws creating new counties have been before the court in the following cases: *Elmore County v. Alturas County,* 4 Idaho, 145, 95 Am. St. Rep. 53, 37 Pac. 349, *Blaine County v. Smith,* 5 Idaho, 255,

48 Pac. 286, *Canyon County v. Ada County,* 5 Idaho, 686, 51 Pac. 748, *Bingham County v. Bannock County,* 5 Idaho, 627, 51 Pac. 769, and *Blaine County v. Lincoln County,* 6 Idaho, 57, 52 Pac. 165.

### STATEMENT OF FACTS.

This is an original application made on behalf of Shoshone county for a writ of mandate to compel certain officials of Nez Perce county to issue warrants on the general fund of that county for the sum of $60,655.98, which amount was certified to by accountants appointed under the provisions of section 4 of an act approved March 10, 1903 (Sess. Laws 1903, p. 204). This controversy grows out of the detachment of a portion of the territory of Shoshone county and annexing the same to Nez Perce county pursuant to the provisions of said act. Plaintiff's petition or complaint sets out, among other things, the appointment of accountants mentioned in section 4 of the act; the meeting of such accountants; the making of a certificate of the adjustment of the debt of Shoshone county; their making and subsequent signing of a certificate of adjustment under the direction of this court (see *Shoshone County v. Thompson, ante,* p. 130, 81 Pac. 73) ; their filing of a copy of that certificate with the commissioners of Nez Perce county on the nineteenth day of July, 1905; the refusal of the commissioners to act upon the tender of money from Shoshone county, and the demand of Shoshone county for warrants drawn upon the general fund of Nez Perce county and the tender of the sum shown by the certificate to be due from Shoshone county and the demand for warrants drawn upon the general fund at the regular meeting of the commissioners of Nez Perce county in October, 1905, and the refusal of the tender and demand. The prayer is for the issuance of a writ of mandate to compel the commissioners to issue and deliver the warrants of Nez Perce county to the amount above named as provided by the act.

Counsel for the defendants interposed a general demurrer to plaintiff's complaint, and the argument on that demurrer was directed to the constitutionality of the annexation act,

and particularly to the constitutionality of the provisions of section 4 thereof requiring the warrants to be delivered to Shoshone county by Nez Perce county in the adjustment of their differences.   Section 4 of the act is as follows: "At the first regular meeting of the board of commissioners, next following the annexation of the territory hereinbefore in this act described, to the county of Nez Perce, the said county commissioners shall each appoint a competent accountant, who shall, within ten days after the appointment, meet at the county seat of Shoshone county and take the usual oath of office and proceed, then and there, to ascertain from the books and records in the auditor's and recorder's offices the whole amount of the indebtedness of the said Shoshone county at the date that this act takes effect, and to apportion said indebtedness *pro rata* between the counties of Shoshone and Nez Perce, according to the taxable property that the territory annexed bears to the whole as now organized under the provisions of this act should the same take effect; basis and valuation of property to be taken and computed from the assessment-roll, and books of the present Shoshone county made for the year next preceding the date of such election.   Said commissioners shall apportion the value of the said county property of Shoshone county upon the same basis as is provided for the apportionment of the indebtedness of Shoshone county, and said accountant shall in adjusting said indebtedness of the said county property allow Shoshone county to retain all county property, such as courthouses, furniture and fixtures, but the said Nez Perce must give Shoshone county credit in the adjustment of the accounts for the annexed territory's apportionment of the value of the said courthouses and other county property.   Said credit to apply in the adjustment of Nez Perce county's portion of the indebtedness to Shoshone county.   Said accountants shall make certificates of the adjustment they make showing a fully itemized statement of the debits and credits, and file one each with the chairman of the board of commissioners of each of the counties of Shoshone and Nez Perce, and whatever amount is shown by such certificate to be due from either one of the counties to the other,

the board of commissioners of the proper county shall cause warrants to be drawn by the auditor of their county in favor of the other of the amount due, at their first regular session after the filing of the accountant's certificate as aforesaid; provided, that in fixing values on Shoshone county property no value shall be placed upon the roads and bridges within said county; provided further, that if said accountants cannot agree as to the value of the county property, as herein stated, the governor of the state of Idaho shall appoint one disinterested person, who must be a resident of some other county, who shall fix and determine the value of said property, and make out and file certificates accordingly, with the chairman of the boards of county commissioners of Shoshone and Nez Perce counties." It appears from the record that the accountants appointed for adjusting the differences between Shoshone county and the portion detached therefrom and annexed to Nez Perce county, certified that there was due to Shoshone county the sum of $60,655.98; that is, that such sum was the proportionate part of the indebtedness of Shoshone county for which the detached portion was liable, and it is contended by counsel for the defendants that Nez Perce county is not liable for any part of such indebtedness, and that an issuance of the warrants of Nez Perce county on the general fund of the county would be simply a transfer of $60,655.98 of Shoshone county's past indebtedness to Nez Perce county. The act under which the detached portion of Shoshone county was annexed to Nez Perce county provides for a vote of the qualified electors upon the proposition whether a portion of Shoshone county should be annexed to Nez Perce county. An election was held and resulted in favor of annexation. The county commissioners and other officers of Nez Perce county thereafter assumed jurisdiction over the annexed portion and have levied and collected taxes therein.

The question presented for determination in this case is whether or not the act of March 10, 1903, known as the annexation act, is in violation of the provisions of section 3 of article 18 of the state constitution, and if not in violation thereof, whether or not Nez Perce county as a whole is liable

for the proportionate part of Shoshone county's indebtedness which has been apportioned to the segregated territory.   Section 3, article 18 of the constitution is as follows: "No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off, voting on the proposition at a general election, shall vote in favor of such division; provided, that this section shall not apply to the creation of new counties.   No person shall vote at such election who has not been ninety days a resident of the territory proposed to be annexed.   When any part of a county is stricken off and attached to another county, the part stricken off shall be held to pay its ratable proportion of all then existing liabilities of the county from which it is taken."

AILSHIE, J.—The decisive question in this case is to determine the meaning of that portion of section 3 of article 18 of the constitution which reads as follows: "When any part of a county is stricken off and attached to another county, the part stricken off shall be held to pay its ratable proportion of all then existing liabilites of the county from which it is taken." It seems to me that this language is too plain and simple to either require or admit of construction.   It continues the liability of the detached territory for its ratable proportion of the debts of the county from which it was taken.   That was the evident intention of the framers of the constitution and was clearly so expressed by them.   It is as much a prohibition against the legislature imposing such indebtedness on the county to which the detached territory is annexed as it is against leaving the entire indebtedness to be paid by the old county from which the portion is stricken off.   The express language is that "the part stricken off shall be held to pay its ratable proportion" of the existing debts.   The maxim "*Expressio unius est exclusio alterius*" is peculiarly applicable here.   The constitution having said that one particular portion of territory should pay a certain portion of indebtedness has thereby excluded and exempted all other territory from paying the same.

Sections 4 and 5 of the constitution of Colorado adopted in 1876 are as follows: "Sec. 4.   In all cases of the establish-

ment of any new county, the new county shall be held to pay its ratable proportion of all then existing liabilities of the county or counties from which such new county shall be formed. Sec. 5. When any part of a county is stricken off and attached to another county, the part stricken off shall be held to pay its ratable proportion of all then existing liabilities of the county from which it is taken.'' Section 4 above quoted is not to be found and has no parallel in our constitution; but section 5 is in the identical language of the last sentence of section 3, article 18 of our constitution as quoted above. This sentence found in the Idaho constitution was evidently copied from the Colorado constitution, for I cannot find the identical language in the constitution of any other state. In 1886, and long prior to the adoption of our constitution, the supreme court of Colorado, in *Re House Bill No. 122*, 9 Colo. 640, 21 Pac. 478, had under consideration the application of sections 4 and 5 of article 14 of their constitution, and in the course of the discussion said: ''While sections 4 and 5 of article 14 of the constitution relate to a common subject, viz., the *pro rata* payments of existing liabilities upon a subdivision of a county or counties, yet they relate to this subject under wholly different circumstances and conditions. A distinct and different rule is likewise provided for each case. Section 4 refers to the liabilities of a new county created out of a part or parts of one or more existing counties. Section 5 has no reference to the formation of a new county, but to the division of an existing county, whereby a portion of its territory is stricken off and added to another existing county. In the first case, the new county, as a distinct organization, is 'held to pay its ratable proportion of all then existing liabilities of the county or counties from which such new county shall be formed'; in the second, the original liability of the part stricken off is continued.'' The court, as will be seen, held in that case, and so advised the legislature, that ''the original liability of the part stricken off is continued.'' It must be assumed that the framers of the constitution in incorporating section 5 of article 14 of the Colorado constitution into the Idaho constitution, did so with full knowledge

of the construction and interpretation previously placed on it by the Colorado court, and meant and intended to adopt that construction.

In *Stein v. Morrison,* 9 Idaho, 426, 75 Pac. 246, this court held that, "when a statutory or constitutional provision is adopted from another state, where the courts of that state have placed a construction upon the language of such statute or constitution, it is to be presumed that it was taken in view of such judicial interpretation, and that the purpose of adopting the language as the same had been interpreted and construed by the courts of the state from which it was taken." If, therefore, there can be any doubt as to the meaning of the provision of section 3, article 18 now under consideration, that doubt ought to be entirely and completely dispelled by the authority of the Colorado court above quoted. We are not, however, without further authority on this subject to the same effect as above quoted. There is to be found in section 1 of article 9 of the constitution of Texas as adopted in 1875 a provision to the same effect, and in almost the same language as in our constitution. It reads: "When any part of the county is stricken off and attached to or created into another county, the part stricken off shall be holden for and obliged to pay its proportion of all the liabilities then existing of the county from which it was taken, in such manner as may be prescribed by law." This provision of the Texas constitution was construed and upheld in *Miles County v. Brown County,* 85 Tex. 391, 20 S. W. 81, where the supreme court of Texas held an act unconstitutional, for the reason that the legislature had attempted to measure the *pro rata* proportion of the liabilities to be paid by the detached portion by the extent of its area instead of by the amount of its taxable property. In *Blount Co. v. Loudon Co.,* 8 Heisk. (55 Tenn.) 854, and *Commissioners of Vance v. Commissioners of Granville,* 107 N. C. 291, 12 S. E. 39, the supreme courts of Tennessee and North Carolina have each placed a like construction on similarly worded legislative acts of their several states. The courts there held that the indebtedness is continued

against the portion of territory stricken off to the extent of its proportionate share thereof.

Some comment has been made to the effect that this provision works an injustice on the people of the detached territory. A careful consideration of the origin of the liability and the legal and moral obligation of the people who incurred the same to see it paid, makes it clear that justice is more effectually done by requiring the segregated territory to pay than by imposing the liability on a county and territory that received no consideration therefor. But it is not out of place to say here that the duty of this court is to ascertain the meaning and intent of the constitution, and when that object is accomplished to so declare it; the question of its justice or injustice has been passed on by the people in its adoption, and with that the courts have nothing to do. The courts are not the authors of the constitution, but are rather its interpreters.

My next inquiry will be to ascertain whether or not the legislature in the passage of House Bill No. 123, approved March 10, 1903, and providing for the annexation of a portion of Shoshone county to Nez Perce county in any way avoids or contravenes the foregoing constitutional provision. It is conceded that it provides a just and equitable method of ascertaining and establishing the "ratable proportion" of liabilities to be borne by the detached territory. In fact, the only part of the act of which Nez Perce county complains is that sentence contained in section 4, which reads as follows: "Said accountants shall make certificates of the adjustment they make showing a fully itemized statement of the debits and credits, and file one each with the chairman of the board of commissioners of each of the counties of Shoshone and Nez Perce, and whatever amount is shown by such certificates to be due from either of the counties to the other, the board of commissioners of the proper county shall cause warrants to be drawn by the auditor of their county in favor of the other of. the amount due, at their first regular session after the filing of the accountant's certificate, as aforesaid." It is claimed by the defendant that the legislature, by the fore-

going provision, has attempted to make the whole of Nez Perce county liable for the indebtedness which the constitution meant should be borne by the annexed territory. There was no attempt by this act to repeal any existing laws except as might be in conflict with the act. This act should therefore be read in connection with the existing laws on the same subject. The legislature by an act approved March 8, 1895 (Sess. Laws 1895, pp. 58, 59), amended sections 3605 and 3606 of the Revised Statutes, which provided for the issuance of funding and refunding county bonds, and for continuation of liability therefor by the whole territory included within the jurisdiction at the time of the issuance of the bonds. Section 3605, which provides for the levy and collection of a tax to pay the principal and interest of such bonds, contains this provision: "The faith, credit, and all taxable property within the limits of the county as constituted at the time of such issue are and must continue pledged to the payment of such bonds." Section 3606 is as follows: "Should any part of a county that has incurred a bonded indebtedness, be cut off, and annexed to another county, or erected into a new or separate county, the assessor of the county to which the segregated portion is attached, or the assesor of the new county created as aforesaid, shall upon notice from the board of county commissioners of the original county from which such segregated portion was detached, given at the regular session of the board when county and state taxes are levied, collect in said segregated territory, and in addition to the other taxes collected by him for county and state purposes, and at the same time and in the same manner, the tax levied by said board of commissioners as herein provided; and the laws of the state relating to the levy and collection of taxes, and prescribing the powers, duties and liabilities of officers, charged with the collection, and disbursement of the revenue arising from taxes, are made applicable to this act. The money collected by the assessor as aforesaid shall be paid over by the treasurer of the county collecting it, to the treasurer of the county losing the said territory, and for the purposes herein directed, but such segregated territory so attached to another

county, or erected into a new county shall be relieved of the annual tax, levied as provided in the foregoing section, when the county acquiring the same, or the new or separate county pays to the county losing the territory that proportion of the whole indebtedness, together with legal interest therein, that the assessed value of property in the segregated territory bears to the assessed value of the property in the whole county, as constituted before the division or segregation thereof.'' These sections were re-enacted and approved February 7, 1899 (Sess. Laws 1899, p. 138). It may be said that the foregoing provisions apply especially to bonded indebtedness; but I do not think that can make any difference for the purposes of this case. All the legal indebtedness must be paid and for that purpose revenue must be raised by taxation. The record before us is silent as to whether the indebtedness is warranted or bonded, but in view of our constitutional and statutory restrictions of counties and county indebtedness, I can scarcely imagine a county of this state as having an outstanding warrant indebtedness of $366,373. It is reasonable to assume that this is bonded indebtedness.

It is fair, and indeed our duty, to presume that the legislature knew of the provisions and requirements of sections 3605 and 3606, *supra,* when enacting House Bill No. 123, for the annexation of the territory therein described, and passed the same with an intention of the provisions of section 3606 applying to the collection of taxes for the payment of the *pro rata* proportion of indebtedness to be borne by the detached territory. There is nothing in the act authorizing annexation that is in conflict with section 3606, nor is that section in conflict in any manner with the provisions of the annexation act. They should therefore both stand as valid and effective legislative provisions and be construed together. Territory stricken off from one county and annexed to another has of itself and alone no organization, or officers to act for it, and is necessarily represented by the officers of the county to which it is annexed and becomes a part of such county and county government. It was therefore competent and proper for the legislature to authorize and require Nez Perce

county and its officers to act as the agent, representative or trustee of and for the territory annexed in the adjustment and settlement of its business and fiscal relations with the parent county. That is what the legislature has done. The issuance and delivering of warrants of Nez Perce county to Shoshone county is merely an evidence of the results of the investigation and adjustment and of the amount found due to Shoshone county from the territory it has lost. These warrants will be payable only out of taxes collected from the annexed territory in the manner and under the requirements and restrictions of section 3606 of the Revised Statutes, *supra.* Under these provisions no greater rate of taxation can be collected from the segregated territory in any given year than shall be levied and collected for the same year in Shoshone county for the purpose of defraying the indebtedness of that county existing at the time of the settlement and adjustment of liabilities between the county of Shoshone and the segregated portion. The warrants issued by Nez Perce county as an evidence of indebtedness will only be payable as moneys shall be received by the treasurer of Nez Perce county from such taxation. They can only be drawn against such revenue to be raised in the manner designated. This arrangement and these provisions entail no unusual complications. Under the existing school laws of this state, any school district is authorized to bond for the purpose of erecting school buildings, and in addition thereto is authorized to vote a special school tax for such district. Some of the counties of the state have as many as one hundred school districts, and each having a different rate of taxation for the payment of interest and principal on bonds and the maintenance of the schools. These tax levies are certified by the local or school district authorities to the proper county official, and the taxes are collected by the tax collector in the same manner as county and state taxes are collected.

I therefore conclude that the act of March 10, 1903, providing for the annexation of a portion of Shoshone county to Nez Perce county, is constitutional and valid, and that it is the duty of Nez Perce county to issue its warrants in favor

of Shoshone county for the amount found due and payable out of the revenue to be raised in the manner herein designated. I also conclude that such warrants will become the liability of Nez Perce county only to the extent of its duties and obligations as agent or trustee for the segregated territory in the collection of the tax as the same may be levied and certified from time to time by Shoshone county in accordance with the provisions of law hereinbefore cited. The writ prayed for will issue to the extent and for the purposes herein decreed. No costs awarded.

STOCKSLAGER, C. J., Concurring.—I concur in the conclusion reached by Mr. Justice Ailshie. I can see nothing but equity and justice in this conclusion. It seems to me that it is the only logical construction of section 3, article 18 of our constitution. Under this provision of our constitution and the laws enacted by our legislature quoted by Mr. Justice Ailshie, it would seem that when any number of inhabitants of a county desire to be annexed to another county, the penalty is that they must pay their proportion of the existing debt of the mother county without assistance from the county to which attached. With these constitutional and legislative enactments to guide them as to their future status in both counties, they are given the privilege of voting upon and determining entirely upon their own responsibility their future responsibilities. After the legislature has given them the right to determine this question, neither the mother county nor the county to which it has been determined they may decide to be attached, or otherwise, has any voice in the matter; and in this case when they decided by their votes that they desired to secede from Shoshone county and become attached to Nez Perce county, the officers of Nez Perce county could do nothing other than comply with the law in appointing an accountant to ascertain the existing debts of the two counties, appointing officers and doing all things required of them to put them under precinct, school and county government. They came into Nez Perce county bringing their burdens for which Nez Perce was in no wise responsible, and

in equity should not be required to pay. All this being true, where is the injustice? Shoshone county may collect all that territory owes her on the debt existing at the time of the severance, and for which Nez Perce was certainly in no wise to be held responsible, holding the warrants of Nez Perce as a guaranty of future payment. Nez Perce has no reasonable or valid complaint, for the reason that no additional burden is placed upon the tax-payers for which there is not provided ample security by the addition of the new territory and the requirement that it must pay its own obligation. The inhabitants of the annexed territory have less reason for complaint (we are not informed that they are complaining) than Shoshone as it now exists or Nez Perce since annexation, as it was a privileged question with them, and it is to be presumed they voted upon the question of annexation advisedly and fully realizing that they could not sever their relations with Shoshone county without paying their portion of the debt of that county.

Sullivan, J., dissents.