(January 13, 1908.)

BANK OF COMMERCE, LTD., Appellant, v. GEORGE E. BALDWIN and SARAH A. BOWERS, Respondents.

[93 Pac. 504.]

MARRIED WOMAN'S CONTRACT—LIABILITY ON CONTRACT AS SURETY—CONTRACTS WITH REFERENCE TO MARRIED WOMAN'S SEPARATE PROPERTY—ESSENTIALS OF CONTRACT AS SURETY FOR THIRD PERSON WHERE IT IS SOUGHT TO BIND HER SEPARATE ESTATE.

1. Under the provisions of sec. 2 of the act of the legislature approved March 9, 1903 (Sess. Laws, 1903, p. 345), construed in connection with the other provisions of the code, a married woman cannot bind herself personally for the payment of a debt that was not contracted for her own use or benefit or for the use or benefit of her separate estate, or in connection with the control and management thereof, or in carrying on or conducting business therewith, unless the contract and obligation is made so as to create a lien or encumbrance on her separate estate or some portion thereof as security for the payment of the debt.

2. Under the provisions of sec. 2 of the act of March 9, 1903, which transfers to the wife the management, control and absolute right of disposition of her separate property, and confers upon her all the privileges of contracting in relation thereto, and all the rights or privileges necessary to the complete enjoyment and power of disposition thereof, a married woman has no authority to become surety or guarantor for the debts of others; such right and the concurrent obligations thereof not being necessary or essential to the complete enjoyment of her separate estate.

3. The power to contract with reference to her separate property is not an absolute and unlimited right of contract on all matters, but, on the contrary, confines that right to those contracts that "have reference to her separate estate."

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for the County of Ada. Hon. George H. Stewart, Presiding Judge at the time of trial and rendition and entry of judgment.

Action by plaintiff against one George E. Baldwin and Sarah A. Bowers on a promissory note executed by the defendants jointly, where the debt was contracted for the use and benefit of Baldwin and the money was received by him for his individual use and benefit, and no part thereof was received by Mrs. Bowers. Judgment for defendant Bowers. Plaintiff appealed from the judgment and an order striking from the files a proposed statement. Judgment and order *affirmed.*

Edwin Snow, and Carl A. Davis, for Appellant.

It is provided by the act of 1903 that a married woman may enter into any contract with reference to her property that a married man may. The limit that is put upon her contractual power is the same as that of her husband. The promissory note in litigation in this case is a contract, and it is a contract by a married woman with reference to her property. By this contract she promises to pay money. Money is property. "The term 'property' includes moneys, credits, bonds, stocks, etc." (Sec. 1313, Pol. Code of Idaho; 6 Words and Phrases Judicially Defined, p. 5717.)

This note, then, is a contract with reference to her property made by a married woman, and under the provisions of the section quoted above she is liable on it to exactly the same extent as her husband would be. There are several cases in this state which directly hold that the wife cannot bind herself for the debt of her husband. But there is no hint in any statute, or in any case, nor is there any reason why, under the statute which prevails here, a married woman is not liable as

a surety for a third party. We are trying to hold this woman not for her husband's debt but for the debt of a third party upon her promise in writing to pay that debt.

N. M. Ruick, for Respondent Sarah A. Bowers.

The statement in this case, not having been filed within the time allowed by the statutes and the order of the court extending the time, should be stricken from the files on motion. (*Swartz v. Davis,* 9 Ida. 238, 74 Pac. 800; *Hoehnan v. New York Drygoods Co.,* 8 Ida. 66, 67 Pac. 796; *Sandstrom v. Smith,* 11 Ida. 779, 84 Pac. 1060; *Lydon v. Piper,* 5 Ida. 541, 51 Pac. 101, 102.)

At common law the wife, except in a few special cases, could not act as a *feme sole,* and this disability continues to exist as to the person and property of married women except to the extent of changes by legislature in express terms or by reasonable construction. (15 Ency. of Law, 2d ed., 790; *Brown v. Brown,* 121 N. C. 8, 27 S. E. 998, 38 L. R. A. 242.) Where a special or limited power of making contracts is given to a married woman, she is still considered as *prima facie* unable to contract at all, and the burden is on the person relying on the validity of her contract to bring it within the statutory rule. (15 Ency. of Law, 792.)

In the cases decided by our supreme court prior to the former decision in this case it had been uniformly held that a married woman's power to contract was limited to contracts having reference to her separate property. This has not been changed by the amendment of 1903 referred to. Was it the intention of the legislature that a married woman should be permitted to contract generally? Then why refer to separate property at all?

AILSHIE, C. J.—This is an appeal from the judgment and an order striking a proposed statement from the files and refusing to settle the same. The trial court had made an order extending the time for preparing the statement to June 7, 1906. Thereafter a further order was made, but the second order was not made until after the expiration of the time al-

lowed by the first order. When the statement was presented for settlement, on motion of the adverse party, the same was stricken from the files, and the court refused to settle it on the ground that it had not been presented in time and that the court had lost jurisdiction to settle or allow it. The action of the court was clearly correct and in conformity with the repeated decisions of this court. (*Lydon v. Piper,* 5 Ida. 541, 51 Pac. 101; *Hoehnan v. New York Drygoods Co.,* 8 Ida. 66, 67 Pac. 796; *Swartz v. Davis,* 9 Ida. 238, 74 Pac. 800; *Sandstrom v. Smith,* 11 Ida. 779, 84 Pac. 1060.)

On the appeal from the judgment the only question presented for our consideration is: Can a married woman be held for the payment of a promissory note executed by her as a comaker with a person not her husband where the debt was not contracted for her own use or for the use or benefit of her separate estate, or in connection with the control and management of her separate estate or in carrying on or conducting business with her separate estate? It is admitted that under the repeated decisions of this court, she would not be liable for this debt if the party for whose benefit the debt was incurred had been her husband. Indeed, it has been repeatedly so held by this court. (See *Dernham v. Rowley,* 4 Ida. 753, 44 Pac. 643; *Jaeckel v. Pease,* 6 Ida. 131, 53 Pac. 399; *Strode v. Miller,* 7 Ida. 16, 59 Pac. 893; *Holt v. Gridley,* 7 Ida. 416, 63 Pac. 188.) This case was here once before (*Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497), and on that appeal the court held that "A married woman cannot bind herself personally for the payment of a debt that was not contracted for her own use or for the use and benefit of her separate estate, or in connection with the control and management thereof or in carrying on or conducting business therewith." We might rest our decision upon the opinion in the last appeal as being the law of the case, but since the question squarely arises on this appeal as to the liability of the wife as a surety or guarantor for the debt of a stranger, we have thought it best to pass on that point. The findings of fact upon which our decision and conclusion must necessarily rest in this consideration are as follows: "That the defendant

Sarah A. Bowers, at the time she signed the said note was a married woman, and at the date of the execution of said note was living with her husband as husband and wife in Ada county, Idaho, and that the said note was not made or signed by her as a charge upon her separate estate, nor for her own use or benefit. That the said note was not made in or about the carrying on of any trade or business by the defendant, Sarah A. Bowers, or for her use, or for her benefit, or for the use or benefit of her separate property.''

The act of March 9, 1903, repealed sections 2498 and 2499 of the Revised Statutes, with reference to a married woman, which sections had previously given the husband the management and control of her separate property, and had also provided for her becoming a sole trader, and instead thereof sec. 2 of the amendatory act provides that ''during the continuance of the marriage the wife has the management, control and absolute power of disposition of her separate property, and may bargain, sell and convey her real and personal property, and may enter into any contract with reference to the same in the same manner and to the same extent and with like effect as a married man may in relation to his real and personal property.'' (Sess. Laws, 1903, p. 346.) It is argued by counsel for appellant that any and all contracts that a married woman can possibly enter into necessarily have reference to ''her separate property,'' and that she may therefore enter into any contract that could be entered into by a *feme sole.* It is further argued that no contract can be entered into but what has reference to *property,* and that therefore a contract by a married woman which has reference to ''her separate property'' will comprehend any and all contracts she might enter into. That position appears to be supported by the supreme court of Kansas in *Deering v. Boyle,* 8 Kan. 525, 12 Am. Rep. 480, wherein the supreme court in considering the liability of a married woman on a promissory note executed for the debt of her husband, and in construing a statute identical with ours, said: ''It must be equally clear that such a contract as the note sued on has reference, more or less remote, to the general property of the person signing the contract. If it has not

such reference, then it has no reference to anything whatever, but is totally and absolutely void.''

In both North and South Dakota the statute provides that ''either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts.''

The supreme court of North Dakota, in *Colonial etc. Mtg. Co. v. Stevens,* 3 N. D. 265, 55 N. W. 578, in considering their statute and the liability of a married woman as surety on a promissory note for her husband, said: ''This statute is very broad in its language. It is true that the contract must be one respecting property; but we cannot assent to the view that it must relate to the married woman's separate property. It would have been easy to have said so in express terms had such been the purpose of the law-making power. When the legislature has established the single and simple test that the contract must be one respecting property generally, we have no right to amend the law, and thereby inject into the act a further limitation which will exclude many contracts respecting property.'' It will be seen from the foregoing quotation that the North Dakota court practically conceded that if the statute read ''with reference to her separate property'' as does our statute, the action could not have been maintained. A like statute was under consideration later by the supreme court of South Dakota, in *Colonial & U. S. Mtg. Co. v. Bradley,* 4 S. D. 158, 55 N. W. 1108, and the court cited *Mortgage Co. v. Stevens, supra,* with approval, and in commenting on this statute, said: ''The learned counsel for the respondents contends that, the authority of a married woman to enter into contracts being limited to contracts 'respecting property,' this limitation should be construed to mean her separate property; but to so construe the limitation would require us to interpolate into the section terms that are not found in the section, which this court would not be authorized to do. It must be presumed that if the legislature intended to so limit

the authority of married women to contract, it would have inserted such qualifying words into the section."

The statute of California has been for many years the same as that quoted from North and South Dakota, and the California court has held that it authorized a contract of the character of the one under consideration here. (*Marlow v. Barlew*, 53 Cal. 456; *Good v. Moulton*, 67 Cal. 536, 8 Pac. 63; *Farmers' Bank v. DeShorb*, 137 Cal. 685, 70 Pac. 771.) The same is true in Nevada. (See *Cartan v. David*, 18 Nev. 310, 4 Pac. 61.) In view of the material essential in which our statute differs from the statutes in California, Nevada and the Dakotas, we feel that the decisions from those courts are not in point in this consideration, further than the general reasoning of the cases might appeal to the court as throwing light upon the legislative intent. The two Dakota cases, however, admit that if their statutes read the same as ours, their decisions would probably have been different. It is insisted by counsel that our amendatory statute must have been taken from the statute of Kansas, and that with it we necessarily adopted the Kansas construction as embodied in *Deering v. Boyle, supra.* (*Shoshone County v. Profitt*, 11 Ida. 772, 84 Pac. 712; *Stein v. Morrison*, 9 Ida. 426, 75 Pac. 246.) If it were conceded that the amended statute, sec. 2 of the act of March 9, 1903, had been taken from the Kansas code, still there would be this objection to the adoption of the Kansas construction thereof. The supreme court of this state has, through a continuous line of decisions for nearly twelve years, held that "in order to charge the separate property of the wife and render it liable to levy and sale, it must be alleged in the complaint and proven that the debt was incurred for the use and benefit of her separate property or for her own use and benefit." Sec. 2504, Rev. Stat., has lent a great deal of force to that conclusion, and that section stands to this day without amendment. Notwithstanding this interpretation of the statute as it has existed in this state, the legislature, although meeting biennially, never attempted in any way to change the rule or announced a different legislative intent until the act of March 9, 1903. When it did make a change,

it simply abrogated the statute providing for a married'
woman becoming a sole trader and transferred the manage-
ment and control and right of disposing of her separate prop-
erty from her husband to her; and that transfer of manage-
ment, control and right of disposition granted a concurrent
and commensurate power and authority to dispose of the same
and contract in reference thereto.   It is evident to us that had
the legislature desired to change the rule as previously an-
nounced by this court and grant the wife the right to become
surety and guarantor and to sign accommodation paper and
go bail, it would have done so in clear and unmistakable terms.
In other words, the legislature would not have limited her
right to contract to those instances merely which have ''refer-
ence to her separate property.''   As it is, they have said
in substance that ''with reference to the wife's separate
property, she may enter into contracts in like manner and
to the same effect as a married man may in relation to his
property.''   When the legislature said that the contracts
the wife can enter into are those ''with reference to her sepa-
rate property,'' it evidently intended to grant her all the
rights and privileges of contracting that are necessary or
essential to the full and complete enjoyment of her separate
property and the right of management and control and dis-
position of the same.   On the other hand, it clearly appears
that by the use of this modifying phrase they did not mean
to extend her liability on contracts beyond that which
would be for her own use or benefit or in reference to her
separate estate.   It is argued, however, that the execution
of a promissory note for a third party is a contract with ref-
erence to the wife's separate property, for the reason that
if she should have to pay it, she could not do so except out of
her separate estate.   This, as a highly attenuated theory, may
have some logic in it, but, on the contrary, it contains much
fallacy.   A promissory note does not become property until
it is executed and delivered.   When delivered, it is the prop-
erty of the payee.   It is to be paid by the makers out of
whatever property they may have at the time of its maturity,

or, in case action is instituted for its collection, out of such property as may be reached by execution. But at the time of the execution of the note, the married woman might not have a single dollar's worth of property in existence nor the expectation of anything but her daily earnings. Still, the person taking the note might rely upon her honesty and earning capacity for its payment, and yet—contrary to expectations —she might not have a dollar when it becomes due, and might not thereafter have anything subject to execution. Now, to say that this note was executed with reference to her separate property, is too far-fetched to have much application to the consideration of this statute. Again, a married woman who has not a dollar's worth of property might execute a note in payment of her own debt or for goods and wares furnished directly to her or for the necessaries of life, and where the property was parted with on the faith of her promise to pay, the contract would be a binding and valid contract against her, but it would not be binding merely because it was a contract "with reference to property," but because it is a contract to pay *her own debt* for her own use and benefit, and if she failed to pay it, the creditor could collect it by execution if she ever had property subject to execution that he could reach before the bar of the statute of limitations cut him off. Where, however, the debt is not hers and she has received none of the consideration either for her own use or benefit or that of her separate estate, in order for the contract to be one "with reference to her separate property," within the purview of our statute, the obligation as to her must become one *in rem* whereby she creates a lien or encumbrance on her separate property for the payment of the debt;—in such case the contract clearly becomes one with reference to her separate estate in so far as it obligates that estate, or any part thereof, for the payment of this specific obligation. The case of *Yale v. Dederer*, 18 N. Y. 265, 72 Am. Dec. 503, has perhaps been more generally criticised than any other American case in reference to its holding on this specific point, and yet to us its reasoning seems more logical and sound than that contained

in any of the opinions that have assumed to criticise it. Among other things, the court there says: "Can, then, the principle on which the liability depends be extended to cases of mere suretyship for the husband or a stranger? It seems to me it cannot. The obligation of a surety, in all other cases, is held to be *stricti juris;* and if his contract is void at law, there is no liability in equity founded on the consideration between the principal parties. . . . . Why should a married woman be made an exception to this rule? We are to remember that her contract is absolutely void at law, and, when she is a mere surety, there is no equity springing out of the consideration. If the promise is on her own account, if she or her separate estate receive a benefit, equity will lay hold of those circumstances, and compel her property to respond to the engagement. Where these grounds of liability do not exist, there is no principle on which her estate can be made answerable. If we hold that the signing of a note as surety brings a charge upon her estate, we must go further, and hold, also, that her guaranty, her indorsement, her accommodation acceptance, her bail bond, indeed, every conceivable instrument which she may be pursuaded to sign, for her husband or others, although absolutely void at law, are so far binding in equity as to charge her property with its payment. This would be a doctrine sustained by no analogies, and opposed to the soundest policy. It would go far to withdraw those checks which are intended to preserve a wife from marital influences, which may be, and often are, unduly exerted, and yet baffle all detection. The doctrine that equity regards her as *feme sole,* in respect to her separate estate, only admits that she may dispose of such estate with or without a written consent of her husband, and without the solemnities which the law in other cases requires. But her mere promise to pay money, as we have seen, is not of itself such a disposition. Courts of equity, proceeding *in rem,* will take hold of her estate, and appropriate it to the payment of her debts; but when her obligation is one of suretyship merely, she owes no debt at law or in equity; if not at law, which is very clear, then quite as clearly not in equity."

It has been urged that a wife at common law would be liable for a debt like the one sued on here, and that since the statute does not specifically prohibit such a contract, she should be held liable.   We would be reluctant to concede such a doctrine.   Originally at common law the wife had no separate estate and could not contract.   Later, the English courts of chancery, through the medium of trusts, began to recognize and allow separate estates to be settled upon married women. Following the allowance of such estates, the courts of chancery, irrespective of the *feme covert's* incapacity to contract, held that where the promise was made with reference to her separate estate and she had signified an intention or desire to obligate her estate for a debt where the benefit or consideration moved to her or her estate, the courts of chancery would decree the payment of the same out of the separate estate. Controversies, however, arose not infrequently, as to whether such obligation should be paid out of the separate estate that the *feme covert* had at the time the debt was contracted and of the promise to pay, or whether it could be made out of estate coming to her after the obligation was incurred.   (*Pike v. Fitzgibbon* and *Martin v. Fitzgibbon*, 6 Eng. Rul. Cas. 56.) An examination of the English cases on this subject discloses that, with a very few exceptions, they were cases where the debt was contracted by the wife for her separate use and benefit, or her separate estate or in reference thereto.   It will also be seen on a perusal of those cases that there was no unanimity of opinion as to the true principle to be applied, and that such eminent English chancellors and jurists as Lords Hardwicke, Thurlow, Bathurst, Alvanley, Rosslyn and Eldon, frequently disagreed as to the true principle upon which such decrees rested and as to the facts under which that principle, whatever it was, should be applied.   As late as 1873, in *London Chartered Bank of Australia v. Lempriere*, 21 Eng. Rul. Cas. 553, on an appeal from the supreme court of the colony of Victoria, the court had under consideration the character of the "engagement" for which a wife's separate property would be held in equity.   The diversity of opinion as to the extent

of such liability is disclosed by a quotation in the latter case from *Johnson v. Gallagher,* 30 L. J. Ch. 298, wherein the lord justice said: "I am not prepared, however, to go to the length of saying that the separate estate will, in all cases, be affected by a mere general engagement. The cases of *Jones v. Harris* and *Aguilar v. Aguilar* show that the engagement which, if the married woman was a *feme sole,* the law would create for repayment of the consideration of a void annuity would not affect it. It seems to follow that, to affect the separate estate, there must be something more than the mere obligation which the law would create in the case of a single woman. What that something more may be, must, I think, depend in each case upon the circumstances. What might affect the separate estate in the case of a married woman living separate from her husband might not, as I apprehend, affect it in the case of a married woman living with her husband. What might bind the separate estate, if the credit be given to the married woman, would not, as I conceive, bind it if the credit be not so given." The London Chartered Bank of Australia case was cited and distinguished in *Pike v. Fitzgibbon, supra,* wherein it was expressly admitted that there could be no liability against a married woman at common law, and the relief there was granted upon the theory of a "promise" rather than that of a "contract." It will also be noticed that the principle which has been kept uppermost was that the wife received the consideration for the "promise," or that it inured to the use and benefit of her separate estate. In practically every instance where a decree has been allowed against her estate, it has been upon the theory,—if not express, then implied,— that the obligation was one incurred "with reference to her separate estate or property."

For interesting American reviews of the English authorities on this subject, see *Ewing v. Smith,* 3 Desaus. Eq. (S. C.) 417, 5 Am. Dec. 557; *Jaques v. Trustees First Methodist Episcopal Church,* 17 Johns. 548, 8 Am. Dec. 447; *Yale v. Dederer,* 18 N. Y. 265, 72 Am. Dec. 503; 22 N. Y. 450, 78 Am. Dec. 216; *Cartan v. David,* 18 Nev. 310, 4 Pac. 61.

We conclude that the action of the trial court in entering judgment in favor of the defendant Bowers and in denying the motion was correct, and the same is hereby affirmed. Costs awarded in favor of respondent.

Stewart, J., concurs.

SULLIVAN, J., Concurring.—I concur in the conclusion reached, for, as I view this case, the former opinion rendered by a divided court is the law of the case on the questions decided by my associates on this appeal. For that reason it is not necessary for me to express my views of the questions decided on this appeal.