NANNIE L. BRUCE v. SMITH B. SQUIRES *et al.*

No. 13,318.    (74 Pac. 1102.)

SYLLABUS BY THE COURT.

1. GIFT—*Execution and Effect.*   To constitute a valid gift, either *causa mortis* or *inter vivos*, it must be completely executed and go into immediate effect.

2. ——— *Oral Promise, Effectual at Death, Held Invalid.*   A verbal promise or proposition by one to give to another a stock of goods, to be effectual in the future at the death of the intended donor, passed no title and conferred no rights on the intended donee.

3. REPLEVIN — *Showing of Officer in Possession Held Sufficient.*   In an action of replevin by a claimant to recover from an officer property taken on attachment against such claimant, a showing that the attachment was issued at the suit of a *bona fide* creditor, and that the attachment process was valid on its face, will be

deemed sufficient to entitle the officer to the possession of the property and to hold the same until some one has shown a better right to it.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed January 9, 1904. Affirmed.

*T. H. Stanford*, and *J. B. Ziegler*, for plaintiff in error.

*Albert L. Wilson*, and *J. F. Bellamy*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : The controversy in this case is as to the ownership and possession of a stock of goods in Cherryvale, known as the "Variety Store." It was attached by the sheriff at the instance of creditors of J. F. Bruce and as his property. Nannie L. Bruce, his wife, replevied the stock from the sheriff, claiming it as her own and that she had acquired it by gift from J. M. Bruce, the father of her husband. On her part, it is claimed that in 1898 J. M. Bruce obtained a half-interest in the stock ; that, as he was very old and feeble, he employed plaintiff, who was then Nannie L. Butler, to take care of his interest in the store, and that in 1898 he purchased the remaining interest, when she was given entire charge of the business and became sole manager for J. M. Bruce. She testified that for this service she received five dollars per week and such goods from the store as she needed for herself and family. In 1899 she married J. F. Bruce, and thereafter she and her husband lived in the family of J. M. Bruce, and she continued to manage the store. J. M. Bruce died about four months after the marriage, but for a number of months thereafter the business

was conducted in the name of J. M. Bruce, and afterward it was carried on in the name of Nannie L. Bruce, until August, 1901, when the stock was attached. She says that after her marriage and prior to the death of J. M. Bruce the latter told her on several occasions that she had taken good care of the stock of goods and he wanted her to continue to take care of it, and also to care for his wife, Jane Bruce, and that she should receive the stock of goods when he died. The last talk of this kind was about three weeks before his death. At the time these statements were made there was no formal transfer of the goods, nor any delivery of possession. She stated that there never was any transfer before his death and that he did not make a gift of the store to her at the time the talks were had; that the store was to remain his until he died and that she was not to receive it, and did not acquire a title to it, until after his death. She further stated that she continued to manage the store for him until he died, when, as she says, the property became hers.

On the other hand, it is claimed that J. M. Bruce never owned the store nor had any interest in it to give to any one; that he had no money with which to purchase a stock of goods, and, being about eighty years of age and very feeble, had no interest in business and was unable to give any attention to such an investment. It was further claimed that J. F. Bruce furnished the money with which the store was purchased, and, as he was financially involved in another business which he was carrying on, he used the name of his father in the purchase and management of the store, and arranged that Nannie L. Butler, who was soon to become his wife, should be placed in charge of it; that he conducted the negotiations in the pur-

chase of the stock, and had a general oversight of the business, while his father rarely visited the store and showed no special interest in the business; that after the marriage of J. F. Bruce and after the death of his father he spent most of his time in the store, and appeared to be managing the business.

After the evidence of both parties had been submitted, the court directed the jury to return a verdict in favor of the sheriff.

· The main question discussed here is whether the the plaintiff acquired any ownership or interest in the property by the proposed gift from her father-in-law. If it be granted that J. M. Bruce had something to donate, did his proposals and statements made to the plaintiff constitute a gift? It will not be seriously contended that there was a gift *causa mortis*, as the things essential to such a gift were not present. One of these is that it shall be made in view of impending death; another, that the donor shall die from the disorder or peril; and still another, that there shall be an actual delivery of the thing donated. Some, if not all, of these essentials were lacking, but we still have the question whether there was a gift *inter vivos*, or any other legal donation of the property.

To constitute a gift of any kind it must be completely executed and go into immediate effect. Whether it is a gift *causa mortis* or *inter vivos*, an essential to its validity is that there was an actual and complete delivery of the property made in execution of the gift and for the express purpose of consummating it. Here it is admitted that the gift was not to take immediate effect. No transfer or change of title was contemplated by the parties at the time the proposals were made, nor until the death of the donor, and in fact there was no delivery or change of possession during the lifetime of

J. M. Bruce. Under the testimony we may assume that J. M. Bruce declared a purpose to give Nannie L. Bruce the property ultimately, but it was not to be hers while he lived. She conceded that she was to manage the property for him until his death, whether near or remote, and, therefore, as she was holding the property for him, her possession must be regarded to be his possession. It follows that there was not that relinquishment of claim to the property, nor that surrender of possession and dominion over it by the donor, nor acceptance by the donee, necessary to a completed and valid gift.

In *Gallagher v. Donahy*, 65 Kan. 341, 69 Pac. 330, it was held that "to constitute a valid gift *inter vivos* there must be not only an intention gratuitously to give, but an absolute transfer of the property, which takes immediate effect." It has been well said that "a mere intention to make a gift, however clearly expressed, which has not been carried into effect amounts to nothing, and confers no rights in the subject-matter of the proposed gift upon the intended donee." (14 A. & E. Encycl. of L., 2d ed., 1017, and cases cited.) There being neither a gift nor a bequest of the property, the plaintiff utterly failed to sustain her claim to the ownership and possession of the property. She was the plaintiff in the action and undertook to recover the possession of the property by virtue of her ownership acquired by gift from her father-in-law, and having failed to prove that she was the owner of the property, and as her possession was only incidental to ownership, she necessarily failed to show a right of recovery, and the court was therefore warranted in directing the jury to find against her.

The attachment processes were valid upon their face, and presumably were issued in good faith. No

question was raised at the trial but that the attachment suits were brought by *bona fide* creditors holding valid claims against J. F. Bruce. An effort was made, it is true, to show that the indebtedness existed at the time the store was purchased, but that there was indebtedness of the amount claimed was not contradicted. The proof in this respect was sufficient to meet the requirements of the case. It was not necessary for the sheriff to make a detailed showing, such as would be necessary in attachment cases, or to litigate all the questions in this action that would be required in such proceedings. When it was shown that the attachment was issued at the suit of a *bona fide* creditor, and that the attached property was held on process valid on its face, it was sufficient to entitle the officer to the possession of the property, at least, until some one else showed a better right to hold it.

There was nothing substantial in the objections to the rulings on the testimony, nor do we find any exceptions which justify a reversal.

The judgment of the district court is affirmed.

All the Justices concurring.