(January 7, 1918.)

## LEWIS COUNTY, STATE OF IDAHO, a Municipal Corporation, and LUTHER T. McKEE, Treasurer of Lewis County, State of Idaho, Appellant, v. STATE BANK OF PECK, a Corporation, Respondent.

[170 Pac. 98.]

GIFT OF PERSONAL PROPERTY—DELIVERY—NEGOTIABLE INSTRUMENTS—NECESSITY FOR DELIVERY—RIGHT TO POSSESSION—CLAIM AND DELIVERY.

1. In order to constitute a gift of personal property there must be an actual and complete delivery thereof made in execution of the gift, and for the express purpose of consummating it.

2. No obligation arises upon a promissory note until it has been delivered.

3. Delivery, within the meaning of Rev. Codes, sec. 3473, providing that, "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto . . . ," imports such a transfer of the instrument to another as will enable the latter to hold it for himself. If the maker or drawer has only put the paper into the hands of his agent to hold as such, he has not delivered it.

4. *Held,* that under the evidence in this case, the notes were never delivered to appellant county, nor to its treasurer, the payee designated in the notes, nor to anyone else on its behalf, in trust or otherwise.

5. *Held,* that under such circumstances the appellant acquired no right or interest in the notes, nor to the possession thereof, and therefore its action in claim and delivery cannot be maintained.

[As to conveyances which must be regarded as gifts, see note in 65 Am. St. 798.]

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action in claim and delivery. Judgment for defendant affirmed as modified.

S. O. Tannahill, for Appellant.

In the absence of a statute prohibiting the receiving donations or gifts, the general rule is that the donations being for the benefit of the county and not creating a liability against it, the donation may be received. (2 Dillon's Mun. Corp., 4th ed., sec. 566.)

Eugene A. Cox, for Respondent.

"In order to constitute a gift of personal property, three things are necessary: (a) An intention on the part of the donor to presently give; (b) a subject matter capable of passing by delivery; and (c) an actual delivery at the time. (*Hecht v. Shaffer*, 15 Wyo. 34, 85 Pac. 1056; *Jackson v. Lamar*, 67 Wash. 385, 121 Pac. 857; *Meyers v. Albert*, 76 Wash. 218, 135 Pac. 1003.) The delivery must be such as will divest the donor of the present control and domination over the property absolutely and irrevocably and confer upon the donee the domination and control." (*In re Slocum's Estate*, 83 Wash. 158, 145 Pac. 204; *Bliss v. Bliss*, 20 Ida. 467, 119 Pac. 451; *Bruce v. Squires*, 68 Kan. 199, 74 Pac. 1102.)

The same general rules are applicable to voluntary subscriptions. (*Twenty-third St. Baptist Church v. Cornell*, 117 N. Y. 601, 23 N. E. 177, 6 L. R. A. 807; *Butler University v. Scoonover*, 114 Ind. 381, 5 Am. St. 627, 16 N. E. 642; *Phillips Limerick Academy v. Davis*, 11 Mass. 113, 6 Am. Dec. 162; *Culver v. Banning*, 19 Minn. 303; *Albany Presbyterian Church v. Cooper*, 112 N. Y. 517, 8 Am. St. 767, 20 N. E. 352, 3 L. R. A. 468; *Johnson v. Otterbein University*, 41 Ohio St. 527; *Foust v. Cumberland Presbyterian Church*, 8 Lea (Tenn.), 552; *Broadbent v. Johnson*, 2 Ida. 325, 13 Pac. 83.)

BUDGE, C. J.—This is an action in claim and delivery for the possession of certain promissory notes, or the value thereof in case delivery cannot be had.

It is alleged in the complaint: "That on the 6th day of February, 1915 . . . ., the said plaintiff, the county of

Lewis, . . . . was, and now is the owner of, and the said
plaintiff, Luther T. McKee, treasurer of said Lewis county,
Idaho, was, and now is entitled to the possession of for the
use and benefit of the said plaintiff, Lewis county, Idaho,
the following described promissory notes''; here follows a
description of the various notes. The answer denies owner-
ship in either of the plaintiffs or that either is "entitled to
the possession of any of the promissory notes in the said
complaint mentioned; and denies that any of the said notes
were made or executed for the use or benefit of plaintiffs,
. . . . or any of them, were ever delivered to plaintiffs, or
either of them, in trust or otherwise.'' And it is affirm-
atively alleged that on the 18th day of April, 1914, the
county, through its board of commissioners, let to Fike &
Mitchell a contract for the construction of a public highway
known as the ''Central Ridge Grade,'' for the sum of $7,250;
that thereafter the contractors completed the work, and that
in the course of performance modifications were made at the
instance of the commissioners, acting as individuals, which
greatly increased the cost and value of the work, and that
the contractors actually disbursed for labor and material
the sum of $11,396.79; that the notes in question were given
by certain residents and property owners who considered
themselves benefited by the highway, to provide a sum suffi-
cient to complete the work over and above the amount allotted
by the county; that the notes were delivered to one Ringsage,
one of their number, to be kept until the contractors should
be through with their work, at which time the notes, or the
proceeds, were to be delivered to the contractors; that while
the contractors were engaged in the work they kept a bank-
ing deposit in a bank at Nez Perce, Idaho, and that for con-
venience checks for labor and materials were from time to
time cashed by respondent bank, cleared through its corres-
pondent banks and paid by the bank at Nez Perce upon
which the checks were drawn. That on the 5th day of
February, 1915, the contractors presented a claim to the
county for extra work in the sum of $2,700, which the board
allowed; that the contractors arranged for the delivery of

the warrant to their bank at Nez Perce and arranged a credit with that bank upon the security thereof. That on the same day the contractors explained the situation to respondent bank; that during the day checks to laborers and materialmen upon the bank at Nez Perce amounting to $2,082.18 were cashed by respondent and cleared as usual. That afterward respondent learned that on the 6th day of February, 1915, the county, through its board, had refused to issue the warrant or pay the claim of the contractors. That after respondent had cashed the checks, Ringsage, with the consent of the maker of the notes, delivered them to respondent to be collected, respondent to be reimbursed out of the proceeds. The answer contains other affirmative matter not material here.

It appears that a petition, signed by certain of the interested residents of the county residing in the vicinity of Peck, was presented to the board of county commissioners requesting that the Central Ridge grade be built by the county; the commissioners decided to build the road and called for bids; on the 14th of April, 1914, the bids were opened and the bid of Fike & Mitchell accepted. At the meeting of the board, Ringsage was present with certain subscription lists which had theretofore been circulated among and signed by various residents and property holders, who agreed to pay certain sums to help in the construction of the proposed road; these lists were not delivered to the county but were retained by Ringsage, who was advised by the county attorney to take out for circulation an escrow agreement; notes were to be taken from the subscribers and to be placed with the agreement with the bank at Nez Perce; this escrow was never delivered. The contract referred to in the answer was entered into on the 18th day of April, 1914; during that summer, largely through the efforts of Ringsage, certain notes were signed by the various subscribers, made payable on their face to Luther T. McKee, treasurer of Lewis county. These notes were never delivered to McKee but were retained by Ringsage, who kept them in his private box with the respondent bank. In December, 1914, it became necessary to

raise some money to help out the contractors; no more money was available under the terms of the contract at that time from the county, and Ringsage, acting with the knowledge of two members of the board of county commissioners, acting as individuals, gave his personal note to the respondent bank for $800, and, with the consent of the signers of some of the subscription notes, changed the name of the payee therein by scratching out the name of McKee as treasurer and writing in his own name, and these notes were put up by Ringsage with respondent bank as collateral to his note. The $800 thus procured was checked out by Ringsage from time to time upon the order of Fike & Mitchell in payment of various debts incurred in the construction work. On February 5, 1915, the commissioners accepted the road and at the same time allowed Fike & Mitchell's bill for extras in the sum of $2,700, and ordered a warrant drawn therefor, and it was arranged to have Ringsage turn over the various subscription notes to respondent bank for collection. This action was reported to respondent bank, which thereupon, and during the same day, honored the checks of the contractors upon their bank at Nez Perce as alleged in the answer. On the following day the commissioners rescinded the action of the previous day, rejected Fike & Mitchell's claim for extras in the sum of $2,700, and directed the auditor not to issue the warrant. Upon learning of this action, the bank at Nez Perce refused to cash the checks which had been honored by respondent bank and they were returned to respondent. On the 9th of February, 1915, Fike & Mitchell gave their note to respondent for $2,400 and Ringsage indorsed all of the subscription notes with the name of McKee by himself, and deposited them as collateral with the note of the contractors to reimburse respondent for the checks cashed on the 5th of February. The trial court found all of the facts substantially as alleged by respondent and entered judgment accordingly. This appeal is from the judgment.

Each separate finding of the court is assigned as error and the sufficiency of the evidence to support each and every

separate finding is attacked.    There is no substantial conflict in the evidence and it supports the findings.

It is further specified that "the evidence is insufficient to sustain the judgment herein, in that it affirmatively shows that the grade was accepted by the board of county commissioners on the 5th day of February, 1915; that the notes then held by S. I. Ringsage became the property of Lewis county; that under the directions of the board of county commissioners the said Ringsage deposited the notes with the respondent bank for collection, and the said bank on said 6th day of February, 1915, accepted the said notes for collection, thereby establishing between itself and the said Lewis county the relation of principal and agent; that no credit was extended to Fike & Mitchell by said bank by reason of the deposit of said notes, and that said notes at the time of deposit and acceptance by said bank were not indorsed; that the said notes were afterwards indorsed by Mr. Ringsage at the request of the respondent bank and the contractors, and by no other person; that the notes were applied by the respondent bank as collateral to the Fike & Mitchell account on February 9, 1915, three days after the said bank had cashed the checks of the contractors, and that such application was made by respondent bank without the knowledge or consent of Lewis county, or any of its officers."

It is the theory of appellant that each of these notes constituted a donation or gift to the county absolutely, that they were the property of the county, and that Ringsage, if not previously the county's agent, became such when the commissioners accepted the grade, and the arrangement was made to have the notes deposited with the respondent bank for collection.    There is no evidence that Ringsage was ever the agent of the county.    But under the most favorable view for appellant, if he became its agent on February 5, 1915, all the facts and circumstances in evidence conclusively show that such relation was created solely for the purpose of delivering to respondent bank the notes held by him as agent of the makers to be collected for the purpose of reimbursing the county for the $2,700 claim of Fike & Mitchell for extras,

which was on that occasion allowed. But, on the very next day, the action of the board in this respect was rescinded, the claim rejected and the auditor directed not to draw the warrant therefor. The county would thereby be estopped from asserting whatever interest, if any, it may have had in these notes.

Furthermore, there are at least two fundamental and elementary legal propositions, either of which is sufficient to raise an insurmountable barrier between appellants and the relief which they are seeking,—both of which hinge upon the fact expressly found by the trial court and clearly established by the evidence, "That the said notes were never delivered to plaintiff county of Lewis nor to Luther T. McKee, treasurer of said county, nor to anyone else on behalf of the said county, nor any of its officers in trust or otherwise." The first proposition is that in order to constitute a gift of personal property, "there must be an actual and complete delivery of the property made in execution of the gift, and for the express purpose of consummating it." (*Bruce v. Squires,* 68 Kan. 199, 74 Pac. 1102; *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204; *Bliss v. Bliss,* 20 Ida. 467, 119 Pac. 451.) And the second is that, independent of the question of any intention to make a gift, no title to a promissory note is shown until it has been delivered. The rule is stated by Bigelow thus: "The contract of the defendant is not complete, and no action upon the instrument can be maintained against him, even by a holder in due course, until he has delivered the instrument. And delivery imports more than handing over to another; it imports such a transfer of the instrument to another as to enable the latter to hold it for himself. If the defendant has only put the paper into the hands of his agent, or of a custodian, to hold accordingly, he has not delivered it any more than if he had passed it from his right hand to his left; he has only enabled the agent or custodian to deliver it." (Bigelow, Bills, Notes and Checks, 2d ed., p. 13, sec. 3.)

The negotiable instruments law, sec. 3473, Rev. Codes, in this respect provides: "Sec. 3473. Every contract on a

negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. . . . . "

Inasmuch as the notes never were delivered to the county nor to anyone on its behalf, it acquired no right or interest therein, nor to the possession thereof, and had no right to such possession at the commencement of its action herein. This being true, that portion of the judgment which provides: "that any notes or cash remaining in the possession of the bank after the payment of the said sum so found to be due by the said bank [be] delivered to the county treasurer of Lewis county" is erroneous. The judgment should have been merely that the plaintiff was not entitled to the possession of the notes and the action should have been dismissed. The cause is remanded, with instructions to modify the judgment in accordance with the views herein expressed, and as so modified, it is affirmed.    Costs awarded to respondent.

Morgan, J., dissents.

Rice, J., concurs.