Argued April 19, affirmed July 11, rehearing denied September 25, 1928.

# ANNA ELIZA MATHEWS *v.* MATTIE M. TOBIAS ET AL.

(268 Pac. 988.)

For appellant there was a brief over the name of *Mr. John F. Logan,* with an oral argument by *Mr. Ishan N. Smith.*

For respondents Mattie M. Tobias, David S. Tobias, Helen Tobias and Emily A. Recard there was a brief and oral arguments by *Mr. T. J. Cleeton* and *Mr. Frank J. Lonergan.*

For respondent Goodyear Tire & Rubber Company there was a brief over the name of *Mr. Robert R. Rankin.*

BELT, J.—This is a suit to impress a trust upon real property by virtue of an alleged oral contract to devise it by will. In 1886 Robert T. Dale died, leaving surviving him his widow, Anna E. Dale, and his daughter, the plaintiff herein. At the time of his death, Dale was the owner in fee of Lot 3, Block 89, Couch's Addition to the City of Portland, Oregon, and other real property not the subject of this controversy. On March 11, 1916, about nine weeks before her death, plaintiff's mother, then ninety years of age, executed a will devising Lot 3 to her great granddaughter, Helen Tobias, the granddaughter of plaintiff and daughter of the defendants, Mattie M. Tobias and her husband, David S. Tobias. After death of the mother and administration of the estate was commenced, the plaintiff instituted a proceeding to contest the validity of this will, asserting that her mother was incompetent to make testamentary disposition of her property and also that the will

was executed as the result of undue influence. This suit finally terminated in the Supreme Court, where the will was upheld. See *Dale's Estate (Tobias* v. *Mathews)*, 92 Or. 57 (179 Pac. 274). Plaintiff then · commenced suit for specific performance of the alleged contract which she says was had with her mother whereby the latter agreed to devise by will the property in question in consideration that the plaintiff would care for and support her and her property during the remainder of her lifetime. On account of the insufficiency of the complaint the Supreme Court affirmed the decree of the lower court dismissing this suit: *Mathews* v. *Tobias et al.*, 101 Or. 605 (201 Pac. 199). Plaintiff then commenced suit in the instant case by filing a complaint alleging facts in keeping with the decision of this court. After hearing upon the merits, the trial court again entered a decree dismissing the suit. Plaintiff appeals.

 It is settled in this state, beyond controversy, that it is competent for a person to make a binding agreement to devise real property by last will and testament: *Mathews* v. *Tobias, supra; Woods* v. *Dunn*, 81 Or. 457 (159 Pac. 1158); *Kelley* v. *Devin*, 65 Or. 211 (132 Pac. 535). However, where the contract is oral and the promisor's lips are sealed by death, courts subject it to the closest scrutiny. It is difficult to defend against such alleged agreements and they are often relied upon to perpetrate fraud. It is generally held, therefore, that the contract must be established by clear and satisfactory evidence. As stated by Mr. Justice BROWN on former hearing, the agreement must be "clear, just, definite, reasonable and mutual in its obligations, * * ." Furthermore, there must be a strict performance by

the promisee of all the terms of the contract: *Holder* v. *Harris,* 121 Or. 432 (253 Pac. 869, 254 Pac. 1021); *Leadbetter* v. *Price,* 103 Or. 222 (202 Pac. 104); *Hawkins* v. *Doe,* 60 Or. 437 (119 Pac. 754, Ann. Cas. 1914A, 765). The law of the case was settled on former appeal and it is not deemed necessary to restate the principles involved. The decision of the case hinges upon questions of fact.

We inquire: Did the plaintiff and her mother make the contract as alleged? Has it been established by clear and satisfactory evidence? Was there such past performance of the contract by plaintiff as to take it without the statute of fraud? Were the services rendered by plaintiff to her mother of such nature and character that they could not be compensated for in money?

■■ In answer to the first question, we think it extremely doubtful that the alleged contract ever existed. It is certain at one time the mother intended to leave plaintiff this property, as evidenced by the first will made approximately at the time plaintiff was married, in 1889. However, it appears that an estrangement arose between plaintiff and her mother during the last few years of her life and that Mrs. Dale destroyed this will. Needless to say she had the right so to do, unless in violation of her contract. That ill will existed between the mother and her daughter for several years is clearly established in a letter December 29, 1914, from plaintiff to her daughter stating that her mother "is still on the war path." It is probable that this trouble arose largely as a result of jealousy and rivalry between the plaintiff and her daughter as to what disposition should be made of this old lady's property. The fact that plaintiff did not rely upon this con-

tract in the first instance but undertook to have her mother declared to have been incompetent to make a will weighs against her present contention. Had the contract in fact existed, it would have been only natural for plaintiff to have declared upon it.

■ Assuming, however, that the contract was made, we are of opinion that plaintiff did not even reasonably comply therewith. According to her testimony she agreed to take care of her mother during the remainder of her life, yet from the uncontradicted testimony we find that the mother was left alone in her extreme old age for many years. Indeed, plaintiff and her husband, after the making of the alleged contract, lived in Pendleton, Oregon, a distance of over 200 miles from Portland, intermittently for a period of eighteen years. When Mrs. Dale became ill it was necessary on several occasions for some of her friends to telegraph to the plaintiff at Pendleton to come and take care of her mother. They met only once or twice during the last two years of the mother's life. Was this such performance of the contract as to thus invoke the aid of equity? Were the services plaintiff rendered of such character as would distinguish them from the usual consideration given to a mother by a dutiful and affectionate daughter? We think not. We have not a case where a daughter denies all other demands upon her time in order to care for an aged mother; renounces social life or performs any unusual or extraordinary services. Plaintiff testified that while she lived at Pendleton she "would come home twice or three times a year and see my mother and look after the property and see that there were no bills unpaid." It is not deemed necessary to recite in detail the facts from this voluminous record to

substantiate the conclusion reached that there was no contract, but, if so, plaintiff has not reasonably complied therewith.

Whether the doctrine of *res adjudicata* applies, as urged by defendants, it is not necessary to determine.

The decree of the lower court dismissing this suit is affirmed. AFFIRMED. REHEARING DENIED.

RAND, C. J., and BEAN and McBRIDE, JJ., concur.