Argued June 8; affirmed July 10; rehearing denied
September 11, 1934

## MAGNESS *v.* MAGNESS ET AL.

(33 P. (2d) 1005)

*Frank Holmes,* of McMinnville, for appellant.

*James E. Burdett,* of McMinnville, and *Wm. W. Harcombe,* of Eugene, for respondents.

CAMPBELL, J.  Andrew Porter Magness and his wife, Amelia Magness, lived near Wheatland in Yamhill county, Oregon.  They raised a family of seven children—three sons, W. B. Magness, D. Austin Magness and P. Clay Magness, and four daughters, Stella Virginia, who became the wife of Thaddeus T. Parker, Melinda Gertrude, who became the wife of James W.

Dryden, Maud M., who became the wife of James W. Longcore, and Edna F., who became the wife of J. R. McKee. As each of said children grew up it would appear that they went out in the world, engaged in various callings and established homes of their own, with the exception of W. B. Magness.

Sometime prior to 1893, Andrew Porter Magness became the owner of the land which is the subject of the controversy in this suit. On December 10, 1895, he and his wife executed a mortgage, covering said land, in favor of T. C. Smith to secure the payment of a note of $1,100, due in three years, bearing interest at 10 per cent per annum. In October, 1898, the mortgagee therein extended the time of payment and reduced the rate of interest to 8 per cent per annum. This mortgage was satisfied of record December 9, 1904.

On September 24, 1931, at the age of eighty-four, Andrew Porter Magness died intestate so far as any written will is concerned, leaving his wife and the above-named children as his heirs. Thereafter, P. Clay Magness was appointed administrator of the estate and proceeded to a final settlement thereof. In due time the administrator filed his final account as such administrator and January 3, 1933, was the date set by the court for its hearing and determination.

On December 30, 1932, plaintiff filed his objections to said final account and made claim that he was the owner of the real estate inventoried as belonging to said estate and which is the subject of this suit. This delayed the hearing and the county court took no further action thereon.

On February 10, 1933, plaintiff filed his complaint herein, against all the heirs of Andrew Porter Magness

and the administrator of the estate, in which he alleged in substance that on September —, 1904, he entered into a verbal contract with his father, Andrew Porter Magness, wherein it was agreed that if he should pay off a mortgage with interest amounting to $1,210, remain upon the premises in question and cultivate and improve the land, support his father and mother during the remainder of their lives in a manner and way suitable to their station in life, that his father would make a will devising him the said premises.

Plaintiff further alleged that he complied with all the terms and conditions of said contract on his part to be performed, and expended large sums of money in improving the premises, and that he not only paid off said mortgage but also other of his father's obligations; that his father failed and neglected to make a will devising the premises to him; he asked for a decree that the defendants be required to convey the premises to him.

To this complaint all defendants, except D. A. Magness, joined in an answer which denied the material allegations of the complaint and for a further answer and defense alleged, in substance, that Andrew Porter Magness, at all times mentioned in the complaint, was the owner of the premises in question and that in 1904 he entered into a verbal contract with plaintiff to farm, cultivate and improve said premises, the proceeds therefrom to be divided between them upon a basis mutually satisfactory, and, as the wants of Andrew Porter Magness were modest, such an arrangement would be, and proved to be, much to the financial advantage of the plaintiff who received large sums of money from the enterprise; that it was under such an arrangement and not otherwise that the plaintiff and Andrew Porter Magness conducted the farming oper-

ations; that plaintiff received a much larger proportion of the proceeds from said operations than Andrew Porter Magness.

Defendant D. A. Magness defaulted. Upon the trial, the court found against the plaintiff and for defendants. Plaintiff appeals.

█▌ There is no dispute between learned counsel for the parties, as to the law relating to the facts in this case.

"It is settled in this state, beyond controversy, that it is competent for a person to make a binding agreement to devise real property by last will and testament." *Mathews v. Tobias, et al.,* 126 Or. 358 (268 P. 988) and many cases therein cited; *Traver v. Nayler,* 126 Or. 193 (268 P. 75).

If such a contract is oral, it can only be established, after the death of the person agreeing to make the will, by clear, convincing, satisfactory, definite evidence. Such contracts, and the evidence in support thereof, are subject to the closest scrutiny by the courts: *Shepherd v. Allingham,* 132 Or. 684 (288 P. 210) and many cases cited therein; *Rahles v. Selling,* 145 Or. 232 (24 P. (2d) 1034).

█ The record presents only a question of fact. That question is: Was the contract, alleged in plaintiff's complaint, entered into and did plaintiff perform his part?

The testimony is conflicting, but tends to show that appellant worked upon the premises intermittently ever since the year 1904. A part of the time he would be away logging or working for the government. At the time he claims to have entered into the contract with his father there were about thirty-five acres of land cleared, five acres of which were in hopyard. All the financing of the enterprise seems to have been done

and the business to have been conducted in the father's name up until the year 1919. It is true that appellant testified that he gave his father money and checks that he received from his logging operations or from his government employment which his father deposited to his own account and thereafter paid out in payment of various bills connected with the farming operations. Yet, appellant has no written evidence or canceled checks to support his contention herein.

The amount of improvements made on the premises seems to have fluctuated with the price of hops. Improvements were generally made following a good price for hops and to languish when the price was low. The evidence conclusively shows that the father was a man of some consequence in his community and enjoyed good credit at the banks. The appellant testified that the father could always borrow sums of money up as high as $1,000 on his note, and that on several occasions he obtained such loans. This would at least indicate that the father was a careful man who took his business obligations seriously and discharged them on time. This is not consistent with appellant's theory that his father neglected to perform his obligation to make a will.

In the year 1919 there was a hopyard of about six acres on the premises. When the extra acre was added, does not appear from the testimony. The price of hops that year went to 75 cents per pound. That year's hop crop brought a sufficient fund to discharge all indebtedness against the farm or owed by the father or the appellant and yet leave a considerable sum for other purposes. From this time on, the appellant conducted the business in his own name, established a bank account and paid many of his bills thereafter by check and also began to keep a record of his business. He

also bought for himself other farm lands and improved them.

The activities of appellant in relation to the premises are as consistent with the idea that he was being amply compensated for the work he performed, from the proceeds of the enterprise, as with the theory that Andrew Porter Magness had agreed to devise the premises to him.

It would serve no useful purpose to give a detailed analysis and review of the 700 pages of testimony which we have attentively read, and the 55 exhibits introduced in evidence, which we have carefully examined. From this bulk, excerpts could be quoted which would appear to support the contentions of plaintiff, and other excerpts taken which would appear to be equally conclusive against his claim.

Suffice it to say that the testimony taken as a whole has not that convincing persuasiveness that would lead us to a firm opinion that the alleged contract was made by Andrew Porter Magness. It is not the character of testimony upon which title to real estate should depend. We, therefore, come to the same conclusion as the learned trial judge who heard the cause, that appellant has failed to sustain his allegation that Andrew Porter Magness agreed to devise the premises in question to appellant. The decree of the circuit court is affirmed without costs to either party. It is so ordered.

RAND, C. J., and BEAN and BAILEY, JJ., concur.