(No. 6509. April 28, 1938.)

ALEX BECKSTEAD, Appellant, v. J. E. GEE et al., Respondents.

[79 Pac. (2d) 293.]

Wilkie & Wilkie, for Appellant.

F. A. Miller, for Respondent.

GIVENS, J.—*In limine* we are met with a motion to dismiss the appeal because one of the sureties on the appeal bond was and is a married woman.

■ This court has held that under such circumstances the undertaking is not merely defective or insufficient but is void. (*Farnsworth v. Viet*, 39 Ida. 40, 225 Pac. 1023, such principle being approved in *Strickfadden v. Greencreek Highway Dist.*, 44 Ida. 751, 260 Pac. 431.)

■■ If a bond is void, only the filing of a valid bond within the statutory time (secs. 11–202, 11–203, I. C. A.) would protect and perfect the appeal. If merely defective or insufficient, the defect or insufficiency is waived unless pointed out within twenty days (sec. 11–203, I. C. A.)

If the first bond was merely defective or insufficient, no notice of the same having been given within 20 days such defect or insufficiency was waived. If on the other hand it was void *ab initio*, no new, or any valid bond was filed within the five days from the time the notice of appeal was served (July 27, 1937) and the rectifying affidavits of appellant and the purported surety, his daughter, Mrs. Margaret B. Bassett, were not filed (March 24, 1938) within the statutory time, i. e., five days after serving the notice (July 27, 1937) of appeal.

■ The announcement of invalidity of *Farnsworth v. Viet, supra,* has stood as the law for sixteen years without reversal or departure, and this court both before and since the Farnsworth case has strictly construed the statutes, as to the contractual rights of a married woman, in her behalf.

" 'Can, then, the principle on which the liability depends be extended to cases of mere suretyship for the husband or

a *stranger*? It seems to me it cannot. The obligations of a surety, in all other cases, is held to be *stricti juris;* and if his contract is void at law, there is no liability in equity founded on the consideration between the principal parties. . . . . Why should a married woman be made an exception to this rule? We are to remember that her contract is absolutely void at law, and, when she is a mere surety, there is no equity springing out of the consideration. If the promise is on her own account, if she or her separate estate receive a·benefit, equity will lay hold of those circumstances, and compel her property to respond to the engagement. Where these grounds of liability do not exist, there is no principle on which her estate can be made answerable. If we hold that the signing of a note as surety brings a charge upon her estate, we must go further, and hold, also, that her guaranty, her indorsement, her accommodation acceptance, her *bail bond,* indeed, every conceivable instrument which she may be persuaded to sign, for her husband or others, although absolutely void at law, are so far binding in equity as to charge her property with its payment. This would be a doctrine sustained by no analogies, and opposed to the soundest policy. It would go far to withdraw those checks which are intended to preserve a wife from marital influences, which may be, and often are, unduly exerted, and yet baffle all detection. The doctrine that equity regards her as *feme sole,* in respect to her separate estate, only admits that she may dispose of such estate without a written consent of her husband, and without the solemnities which the law in other cases requires. But her mere promise to pay money, as we have seen, is not of itself such a disposition. Courts of equity, proceeding *in rem,* will take hold of her estate, and appropriate it to the payment of her debts; but when her obligation is one of suretyship merely, she owes no debt at law or in equity; if not at law, which is very clear, then quite as clearly not in equity.' " (Italics ours.) (*Bank of Commerce, Ltd., v. Baldwin,* 14 Ida. 75, 84, 93 Pac. 504, 17 L. R. A. (N. S.) 676.)

"Where a married woman executes her negotiable note for an obligation for which under the law she is not permitted to bind herself, such as that of a guarantor or surety

for another, or on a *bail bond,* or for a debt which is clearly a community obligation, her subsequent renewal of such note would not make the obligation any more binding, for the reason that all who deal with her are bound to know of such disability. But the rule is otherwise where representations and circumstances are sufficient to warrant the creditor in believing that the money was to be used for her own use and benefit, or for the use and benefit of her separate estate.'' (Italics ours.) (*Overland Nat. Bank v. Halveston,* 33 Ida. 489, 500, 196 Pac. 217.)

No element of estoppel enters into the case at bar.

''The statutes of this state with reference to the right of married women to contract must be construed as grants of power rather than restrictions of power. Such common-law disabilities in this respect as have not been removed by statutory enactment are limitations upon the right of married women to bind their separate estates, and such contracts as married women are authorized to enter into are limited to contracts for their own use and benefit or for the use and benefit of their own separate estates.'' (*Pacific Acceptance Corp. v. Myers,* 49 Ida. 585, 588, 290 Pac. 404.)

Conceding, without deciding, that if, in the first instance, the appeal bond recited that the married woman signs and obligates herself as one of the sureties for the use and benefit, and in connection with the control and management, of her separate property, the bond would be valid, such was not the case here.

Furthermore, the showing that the bond was signed by Mrs. Bassett for the benefit of her separate property was insufficient in substance as lacking positive finality of interest in the subject matter of the litigation, appellant merely stating that he:

''prior to the time said bond was signed, and has since, considered giving or leaving it (Gee property) to his said daughter (Mrs. Margaret B. Bassett, the married woman signing as surety), and that he did, prior to the time she signed said bond, mention his intentions in that respect to her at different times.'' (Underscoring ours.)

Mrs. Bassett stating:

"That the property involved in this action consists of about two acres on which there is a dwelling house and is separated from affiants property (above referred to) by a row of lots only, and that her father (appellant) had, prior to the time that affiant signed said appeal bond, led her to believe that he intended to give, or leave, this small tract of land with the dwelling house to affiant, and that she was therefore interested in the outcome of appellant's appeal to said court for her own separate estate as well as the welfare of her father, and that in signing said bond the legal obligation created thereby was for the use and benefit of her separate property and that she is financially able to pay any liability that may arise therefrom out of her separate estate."

This showing on its face is too tenuous, fragile and prospective to be the basis for fixed liability upon the signer as against all the possible defenses which, upon failure of the transfer to her of the property in question, or otherwise, might be interposed. (*Bliss v. Bliss*, 20 Ida. 467, 475, 119 Pac. 451; *Lewis County v. State Bank of Peck*, 31 Ida. 244, 250, 170 Pac. 98; *Witthoft v. Commercial D. & I. Co.*, 46 Ida. 313, 268 Pac. 31; *Mathews v. Tobias et al.*, 126 Or. 358, 268 Pac. 988; *Mitchell v. Pirie*, 38 Wash. 691, 80 Pac. 774; *Nash v. Harrington*, 110 Kan. 636, 205 Pac. 354; *Alexander v. Lewes*, 104 Wash. 32, 175 Pac. 572; *Andrews v. Andrews*, 116 Wash. 513, 199 Pac. 981; *Eidinger v. Mamlock*, 138 Wash. 276, 244 Pac. 684; *Frontier Lodge No. 104, A. F. & A. M., v. Wilson*, 139 Kan. 75, 30 Pac. (2d) 307.)

The appeal is therefore dismissed.

Costs to respondent.

Holden, C. J., and Morgan, Ailshie, and Budge, JJ., concur.