### HIBERNIAN SAVINGS INSTITUTION v. LUHN.

1. MARRIED WOMEN'S CONTRACTS.—The rule laid down in *Building & Loan Association v. Jones* (32 S. C., 313), as to the liability of a married woman's separate estate for money borrowed by her in person or by agent, approved.

2. MARRIED WOMEN'S CONTRACTS—AGENCY.—Where an application for a loan is signed with the name of a married woman *per* her husband, and she signs the bond and mortgage which are delivered to the lender by the husband who received the money, and on being sued the married woman admits the execution of the bond and mortgage, the fact of the husband's agency is sufficiently established, and the lender had a right to assume that the money was borrowed by the wife for her own use.

3. IBID.—ESTOPPEL.—A party dealing with a married woman in 1885 was chargeable with notice of her limited powers to contract. If the contract related to her separate estate, she had the power to make it; if not, she was without power, and no declaration of intention would cure her want of power. Whether it did so relate or not, is a question of evidence, but where her words or conduct caused the other party to believe that the contract was made with reference to her separate estate, she will not be permitted to show that the fact was otherwise.

4. THIS CASE DISTINGUISHED from *Gwynn* v. *Gwynn*, 27 S. C., 542.

5. MARRIED WOMEN'S CONTRACTS—AGENCY—NOTICE.—The money having been borrowed by the husband as agent of the wife, and he having delivered the bond and mortgage duly executed by her, and stated that the money was to be used by his wife in the erection of a building, the lender was without notice of any other intended use of the money, and properly turned the money over to the husband as such agent. Result concurred in,

Before FRASER, J., Charleston, March, 1890.

This was an action brought by The Hibernia Savings Institution of Charleston against Josephine S. Luhn in January, 1889, to foreclose a mortgage executed in January, 1885. The master reported as follows:

The complaint in this action is brought for the foreclosure of a mortgage, executed by the defendant to the plaintiff, under date of 23rd January, 1885, to secure her bond of even date, conditioned for the payment of $1,800, on the 18th January, 1886, with interest after maturity at the rate of 7 per cent. per annum, payable semi yearly in advance. The complaint alleges simply : I. That the plaintiff is a corporation chartered under the laws of this State. II. That the bond and mortgage were duly made, executed, and delivered by the defendant to the plaintiff as above stated; describing the property mortgaged. III. That the mortgage was duly recorded. IV. That the condition of the bond has been broken, and that there is due thereon the sum of $1,-

989,   And then follows the prayer of judgment of foreclosure and sale.   The answer of defendant admits all the allegations of the complaint, but alleges "that at the time of the execution and delivery of the bond and mortgage mentioned, this defendant was a married woman; that the money received from plaintiff corporation was not used for the benefit of this defendant or for the benefit of her separate estate.   Wherefore defendant prays that the said bond and mortgage be declared null and void, and that the complaint be dismissed."

After the testimony had been closed, and the plaintiff had made his argument in chief, the attorney for the defendant moved for leave to amend the answer, by striking out the words, "that the money received from plaintiff corporation was not used for the benefit of this defendant or for the benefit of her separate estate," and substituting the words, "that said bond and mortgage were not made for the benefit of her separate estate."   The motion was opposed by plaintiff, but I granted the amendment, as it does not seem to me to change materially the defence, and it was represented to me by defendant's counsel, that, owing to his sickness at the time, the answer had not been drawn according to his instruction.   Plaintiff excepted to this order.   The case therefore came up upon the complaint and the amended answer.

A great deal of testimony offered was excepted to on both sides on the grounds of irrelevancy and incompetency, and by consent of counsel for both parties, it was all taken subject to any legal exception that may be urged against it, whether stated specifically in the minutes of reference or not.

After a careful examination and weighing of evidence, I find the following facts: On January 16th, 1885, the late Dr. G. J. Luhn, the husband of defendant, applied to the Hibernia Savings Institution, the plaintiff herein, for a loan on behalf of his wife, representing himself as her agent.   The application was made to F. J. McGarey, the cashier of the bank at the banking house. The application was made in writing upon a printed slip of the bank, and the original application is in existence (ex. A).   It reads as follows:

12—34

*To the President and Board of Directors*
                    *of the Hibernian Savings Institution :*
                CHARLESTON, S. C., January 16, 1885.

GENTLEMEN : I ask for a loan of $1,800, at 7 per cent. per annum, for which offer as security one new two-story frame house, Smith street, just below Vanderhorst street, lot 40 x 133.

Respectfully,

JOSEPHINE S. LUHN,

Per G. J. LUHN.

On Mr. McGarey's examination, he was asked by plaintiff's attorney, "At the time Dr. Luhn was negotiating for the loan, and at the delivery of the bond and mortgage, as the agent for his wife, what purpose did he state the money would be used for by her ?" I ruled this question out as incompetent. The answer of the witness thereto was, however, taken, subject to exception, and will be found in the appendix to the testimony.

The application was referred to the board of directors. They employed Capt. James F. Redding to examine the property. Redding made the examination, found that the buildings on the premises were nearing completion, and made the following endorsement in writing upon the original application : "Approved. J. F. Redding, committee, January 19th, 1885."

On January 24th, 1885, Dr. Luhn presented himself at the bank with the bond and mortgage (exhibits B and C), which are dated 23rd January, 1885, the mortgage being probated January 24th, 1885, and received the money. Eight hundred dollars was paid him in cash and one thousand in check No. 160 on the Bank of Charleston, N. B. A., to the order of 160, which check is in evidence (ex. D). It is endorsed, G. J. Luhn. No further inquiry was made by the bank. The title seems to have been examined by their solicitor, but no written opinion was furnished and no abstract of title has been offered in evidence. There are no payments endorsed upon the bond. Mr. McGarey testifies that the loan was charged on the books of the bank against Mrs. Josephine S. Luhn. Dr. Luhn is dead.

The defendant being a married woman, the burden of proof is upon the plaintiff to show that the contract was made with reference to the separate estate of Mrs. Luhn. The mortgage is of pro-

perty which is conceded to be Mrs. Luhn's separate estate.    As
I understand the law, however, the mortgage is only the secu-
rity for the debt, the debt or contract being the bond.    If the
contract represented by the bond was made with reference to the
separate estate, then it was competent for Mrs. Luhn to mort-
gage the separate estate to secure the bond, otherwise the con-
tract and the mortgage securing it are both void.    Mrs. Luhn
has testified to a state of facts tending to show that she never
intended to sign any bond and mortgage at all, that she never
authorized her husband to borrow money for her, as her agent,
upon the security of her separate estate, and that she was in fact
overreached by her husband in the matter, and that she signed
the bond and mortgage under a misapprehension of their pur-
port.    Inasmuch as the bond and mortgage is admitted by the
answer, I do not consider the testimony competent, not being
pertinent to any issue raised in the pleadings.    See *McGrath
and Byrum* v. *Barnes*, 18 S. C., 606; *Mitchell* v. *DeGraffen-
reid*, Harper, 451.

.Discarding Mrs. Luhn's testimony upon this point, therefore,
from consideration, there remains, however, sufficient evidence to
satisfy me of the following facts: That the lot in Smith street
was given by Dr. Luhn to his wife, the conveyance being dated
July 23rd, 1884, and that he proceeded to erect upon it a house
for her, that he employed a builder, F. Lucas, to erect the house,
made the contracts himself individually with said builder, paid
the bills regularly every week, and purchased and paid for the
lumber which went into the house.    That the house was begun
in October, 1884, and was finished by the 1st of February, 1885,
or a few days after.    That immediately after the completion of
the house, the same builder went on with the work of erecting
other houses for Dr. Luhn upon the adjoining lots owned by him.
That on the 26th of January, 1885, there were issued from the
office of the city assessor several building permits.    One of these
was issued to Mrs. Josephine S. Luhn, upon the application of the
builder, F. Lucas, for the erection of a two-story wooden build-
ing on the lot on the east side of Smith street, between Calhoun
and Vanderhorst streets, at an estimated cost of $1,800.    On the
same day permits were taken out by G. J. Luhn for various other

buildings on adjacent lots.    That on the 26th January, 1885, when this permit was issued to Mrs. Luhn upon the application of the builder, the buildings on the said lot were almost completed, and they were in fact completed a few days later.    That Mrs. Luhn had no money of her own to pay for the erection of said buildings, and that the cost of the same had been by weekly payments defrayed by Dr. Luhn.    While it is, of course, possible that Dr. Luhn may have intended to reimburse himself for the cost of the house from the $1,800 raised upon the bond, there is no proof whatever that the money was obtained for that specific purpose, or was so applied.

I find that Mrs. Luhn did not receive the money raised upon the bond and mortgage, and that the plaintiff has failed to show by satisfactory proof that the contract sued upon was made with reference to Mrs. Luhn's separate estate.    On the contrary, I hold that the transaction was in substance a borrowing of money for the husband's benefit, upon the credit of the wife's separate estate.    That plaintiff was dealing with a married woman—a person with a limited power—and is bound to show, therefore, by a preponderance of legal proof, that the contract was made within the scope of that power.    This the plaintiff, in my judgment, has failed to do, and therefore, under the settled law of this State, I hold, as conclusion of law, that the bond and mortgage sued upon must be declared null and void.

I recommend therefore that said bond and mortgage be adjudged to be null and void, and that the complaint be dismissed with costs.

### CIRCUIT DECREE.

This case came before me at the term of the court held in March, 1890, on a report of the master and exceptions thereto on the part of the plaintiff.

The action has been brought to foreclose a mortgage executed by the defendant to the plaintiff to secure the payment of a bond of the same date given by the defendant to the plaintiff to pay the sum of ($1,800) eighteen hundred dollars, on the 18th January, 1888, with interest after maturity at the rate of seven per cent., payable semi-annually in advance.    The mortgage covers a lot in

the city of Charleston, the property and separate estate of the defendant, a married woman.  The answer of the defendant admits the execution of the bond and mortgage, but sets up as a defence that she was at the time of the execution "a married woman, and that the said bond and mortgage were not given for the *benefit* of her separate estate."  The master recommends that the bond and mortgage be adjudged null and void, and that the complaint be dismissed with costs.

I do not consider it necessary to take up the exceptions *seriatim*, and I will announce my conclusions briefly, endeavoring to conform as near as I can to the rulings of the Supreme Court on this subject.  I am inclined to think, from the admissions in the answer, that the bond and mortgage were duly executed in accordance with the testimony, and after the admission in the pleadings it is too late now to claim that there was any defect which could affect the plaintiff.

After the execution of the bond and mortgage, the defendant, to put it no stronger, allowed her husband to take them to the plaintiff's officers and agents, where it was discounted.  The plaintiff had a right to act on the assumption that the husband was the agent of the defendant for the purpose of having the bond discounted and receiving the money.  The money was loaned to her, and the payment to the husband and agent was a payment to her.  And I see no reason why a married woman should not be held bound by such a transaction as well as any other person.  To allow her now to set up as a defence that her husband had been guilty of a fraud on her rights, would operate as a greater fraud on the plaintiff, whom she permitted to be misled by the execution of the bond and mortgage, and delivering them to her husband under circumstances which held him out to plaintiff as her agent for this business.

I hold that this was a lending of the money to her, and that she is estopped from denying it, unless it shall affirmatively appear that in some way it was brought home to the notice of plaintiff's agents or officers, that the money was for the use of her husband or some other person besides herself, and of which there was not the slightest evidence.  I confess that I see no good reason why she should not be bound by her bond and mortgage, even

if she had communicated the fact to the plaintiffs that she intended to give the money to her husband.

In the light of recent decisions of the Supreme Court, I do not regard it as at all important whether any statement was made to the plaintiff that the money was borrowed for her own use or not; or as to what use was in fact made of it. If she borrowed the money, it was not necessary for it to be for the *benefit* of her separate estate. See *City Building and Loan Association of Greenville* v. *Rebecca G. Jones*, 32 S. C., 313.

It is ordered and adjudged, that the report of the master be overruled, &c.

The defendant appealed on the following exceptions: 1. Because the judge erred in holding that Dr. Luhn's possession of his wife's bond and mortgage authorized the plaintiff, without further inquiry, to act on the assumption that the husband was the wife's agent for the purpose of having the bond discounted. 2. In holding that the money was loaned to Mrs. Luhn, and the payment to her husband was payment to her. 3. In overruling the finding of the master that the transaction was "a borrowing of money for the husband's benefit upon the credit of the wife's separate estate." 4. In holding that Mrs. Luhn was estopped from denying that the transaction was a loan to her, unless she could make it appear affirmatively that the plaintiff had notice that the money was for the use of her husband, or some other person besides herself, and that for the purpose of this estoppel, "it was not at all important whether any statement was made to the plaintiff that the money was borrowed for her own use." 5. In finding as a fact that there was not the slightest evidence to affect the plaintiff with notice that the money was for the use of her husband, or some other person besides the defendant. 6. In holding that there was anything due by the defendant to the plaintiff. 7. In not holding that the defendant was without power to execute the bond and mortgage herein sued on, she being a married woman, and plaintiff having failed to show that said bond and mortgage was made in reference to her separate estate.

*Messrs. Samuel Lord* and *G. W. McCormack*, for appellant.

*Mr. J. E. Burke*, contra.

June 17, 1891.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   This was an action to foreclose a mortgage, and the defence was that the defendant, being a married woman at the time, had no power to make the contract evidenced by the bond and mortgage upon which the action was based.   In the complaint it is alleged that the defendant made and executed the bond and mortgage in question to the plaintiff, and in the original answer defendant admits this allegation, ''but alleges that at the time of the execution and delivery of the bond and mortgage mentioned, this defendant was a married woman ; that the money received from the plaintiff corporation was not used for the benefit of this defendant, or for the benefit of her separate estate.''   And in her amended answer she makes the same admission, ''but alleges that, at the time of the execution and delivery of the bond and mortgage mentioned, this defendant was a married woman, and that said bond and mortgage were not made for the benefit of her separate estate.''

The undisputed facts are that Dr. G. J. Luhn, the husband of defendant, representing himself as agent of his wife, made an application in writing to the plaintiff for the loan of the money mentioned in the bond, to be secured by a mortgage on a lot owned by defendant, on Smith street, which application was signed ''Josephine S. Luhn, per G. J. Luhn ;'' and that a few days afterwards, when the loan had been approved by the board of directors of the plaintiff bank, Dr. Luhn delivered to the bank the bond and mortgage and obtained the money, and the loan was charged on the books of the bank against Mrs. Josephine S. Luhn.

The issues were referred to Master Sass, who made his report, wherein, after narrating the facts which he considered as established by the evidence, which is set out in the ''Case,'' concluded as matter of fact, ''that Mrs. Luhn did not receive the money raised upon the bond and mortgage, and that the plaintiff has failed to show by satisfactory proof that the contract sued upon

was made with reference to Mrs. Luhn's separate estate;" and as matter of law, "that the bond and mortgage sued upon must be declared null and void." To this report the plaintiff filed numerous exceptions, and the case was heard by his honor, Judge Fraser, upon the report and exceptions, who rendered his decree (which, together with the master's report, should be incorporated in the report of this case), overruling the conclusions reached by the master, for the reasons therein stated, and rendering judgment in favor of plaintiff. From this judgment defendant appeals upon the several grounds set out in the record, which, under the view we take of this case, need not be specifically stated here.

In *Building and Loan Association* v. *Jones* (32 S. C., at page 313), the following language was used by the court: "Since the decisions in the cases of *Greig* v. *Smith*, 29 S. C., 426; *Brown* v. *Thomson*, 31 S. C., 436; *Gwynn* v. *Gwynn*, *Ibid.*, 482; *Howard* v. *Kitchens*, *Ibid.*, 490; *Law* v. *Lipscomb*, *Ibid.*, 504; and *Schmidt* v. *Dean*, *Ibid.*, 498, it must be regarded as settled, that where a married woman, either directly or through her agent, borrows money from another, the money so borrowed becomes at once a part of her separate estate, and her contract to repay the same is a contract with reference to her separate estate, which may be enforced against her; and that the lender, in the absence of notice to the contrary, has a right to assume that the money was borrowed for the use of the married woman, and she is estopped from denying that fact, unless it is shown that the lender had notice to the contrary. These cases furthermore determine that the husband may, if so authorized by the wife, act as her agent, and that the disposition which may be made of the money *after* it has been borrowed cannot affect the question. See also *McCord* v. *Blackwell*, 31 S. C., 125."

In view of this deliberate statement of what must be considered as the settled law of this State in regard to the contracts of married women entered into after the adoption of the General Statutes of 1882, and prior to the amendment of 1887, it seems to us that the material questions raised by this appeal are, 1st. Whether the money secured by the bond and mortgage was borrowed

for the use of the defendant.    2nd. If not, whether the plaintiff had any notice that it was borrowed for the use of her husband. While there is no evidence that the money was borrowed by defendant *in person*, we think the evidence does show that it was borrowed by her through her husband as her agent.    It is true that there is no direct evidence that the defendant had ever constituted her husband her agent, yet agency may be, and often is, established by circumstances.    There can be no doubt that, in this instance, the husband assumed to act as agent for his wife in effecting this loan, and so represented himself to the plaintiff; for the application was in writing, to which the name of the defendant was signed by the husband as her agent, and though this would not be sufficient of itself to establish the agency, yet, taken in connection with the other circumstances, we think the agency is clearly established.    The defendant admits in her answer the execution of the bond and mortgage, which necessarily involved the delivery of those papers, and as it is not pretended that she delivered them in person to the plaintiff, but they were delivered by the husband, her admission, connected with this act of her husband, shows that they were delivered by him as her agent; unless we should assume, in the absence of any evidence to that effect, that this husband, who the defendant's own witness, her mother, says was "a kind husband, all that could be desired as a husband and father," had practised a deliberate fraud on his wife.    If, then, the husband, as the agent of his wife, made this application in his wife's name for the loan of the money, promising to deliver, and actually delivering, his wife's bond and mortgage, the execution of which is admitted by her, to secure the repayment of the money borrowed, surely the plaintiff had a right to assume, in the absence of any evidence whatever to the contrary, that the money was being borrowed for the wife's own use, upon the plain, common sense view that where one person applies to another for the loan of money, the lender has a right to assume, in the absence of anything being said or intimated to the contrary, that the borrower wants the money for his own use.

It is contended, however, that this doctrine, which it is claimed was for the first time laid down in *Building and Loan Associa-*

*tion* v. *Jones, supra,* is in conflict with the rule laid down in *Taylor* v. *Barker,* 30 S. C., 242; *McCord* v. *Blackwell,* 31 *Id.,* 135; *Brown* v. *Thomson, Ibid.,* 442; and *Gwynn* v. *Gwynn, Ibid.,* 482. But a careful examination of those cases will show that there is no such conflict. While it is true that inasmuch as a married woman has but a limited power to contract, a person dealing with her must take notice of such disability, and when he seeks to enforce his contract, the burden is upon him to show that the contract is one which a married woman is capable of making, yet how this may be shown is an altogether different question. Like every other fact necessary to be established in the trial of a case in court, it may be shown as well by circumstances as by direct evidence. The question in every case like the present is, first, a question of fact— whether the contract in question was a contract as to the separate estate of the wife. If it is, then the law declares that she is liable; but if it is not, then she is not liable, no matter how clearly she may have expressed her intention to make her separate estate liable; for after the fact is ascertained that the contract was not in reference to the separate estate of the wife, the question becomes a legal question of power, not of intention. Applying this doctrine to the case of a contract to secure the payment of money borrowed, the first inquiry is whether the money was borrowed for her own use; for if it was, then she would be liable; but if not, then she would not be liable, even though she may have expressly declared her intention to bind her separate estate in the obligation given to secure the repayment of the money borrowed, for the simple reason that in the latter case she had no *power* to make such a contract, and her *intention* to do that which she has no power to do, is wholly insufficient to bind her legally.

Where, however, a married woman borrows money, or buys a horse from another, and by her conduct or representations induces the lender or the vendor, as the case may be, to suppose that she is borrowing the money or buying the horse for her own use, when in fact her real purpose, unknown to the party with whom she is dealing, is to obtain the money or the horse for her husband or some one else, she will be estopped from denying that

which she herself had induced the lender or vendor to believe was true, upon the ground that it would be a fraud to allow her to repudiate a contract which she had induced the person with whom she dealt to believe she had the power to make, when as matter of fact she had no such power.  She is estopped from disputing that the *fact* is as she represented it to be.  But when it is once ascertained, *as a matter of fact*, that the contract in question was not made with reference to her separate estate, then nothing that she may do or say will estop her from denying her legal liability under the fact thus ascertained.  If, however, the person with whom she deals, notwithstanding her representation to the contrary, has notice that the contract is not a contract as to her separate estate, but is for the benefit of another, then no estoppel will arise, for the obvious reason that he has not been misled *as to the fact*, and he is bound to take notice of the legal disability of the married woman under the facts of which he has notice.

The following language used by this court in the case of *Gwynn* v. *Gwynn*, as reported in 27 S. C., at page 542, is quoted and relied upon by counsel for appellant: "It does not seem to us that there is any room for any estoppel. As we have seen, the question is one of *power*, not of intention, and in the absence of any allegation and proof of fraud, we do not see how any representations, either by word or act, could affect the inquiry."  But it will be observed that this language was used after it had been ascertained that the contract there in question was not such a contract as a married woman was capable of making, and hence while that language was entirely appropriate to the case then under consideration, it has no application to the present case.  There it was sought to make a married woman liable under a contract of partnership, and there was no question of fact there as to the nature of the contract, while here the primary question is of fact.  In that case, after reaching the conclusion that a married woman had no power to enter into a contract of partnership, it followed necessarily, as we have said above, that nothing which she may have afterwards said or done could affect the inquiry.

It seems to us, therefore, that there was no error on the part of the Circuit Judge in holding that the testimony was sufficient

to show that the money was borrowed by the defendant through her husband, as her agent, for her own use, and that she is therefore liable, unless it further appear that the plaintiff had notice at the time that the money was borrowed for the use of the husband. This brings us to the second question in the case. There is certainly no direct evidence of any such notice to the plaintiff. On the contrary, all the circumstances show that the plaintiff had every reason to believe that the money was wanted for the use of the wife. The application for the loan was made in writing in her name, and her separate property was offered as security. Her bond and mortgage were delivered by one manifestly clothed with her authority as agent; for, as we have said, the admission in her answer of the execution of these papers necessarily implies, in view of the undisputed fact that they were delivered by her husband and not by herself in person, that he was her agent in making such delivery. The loan was charged on the books of the bank against Mrs. Luhn, and not against her husband, and this tends to show that the bank then regarded the transaction as a loan to her. But when to this is added the testimony of the cashier that Dr. Luhn stated at the time that the money was to be used in the erection of a building by Mrs. Luhn, we do not see how it is possible to doubt that, so far from the bank having any notice that the money was borrowed for the use of the husband, there was every reason to believe that it was borrowed for the use of the wife. The fact that the money was delivered to the husband cannot affect the question, for this was manifestly done because the bank regarded him as her agent, and had every reason to so treat him. While, therefore, we are not prepared to endorse the remark of the Circuit Judge, to the effect that she would be liable ''even if she had communicated the fact to the plaintiff that she intended to give the money to her husband,'' yet we think the conclusion which he reached was correct, for the reasons stated above.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN concurred in the result.