(February 28, 1921.)

# THE OVERLAND NATIONAL BANK OF BOISE, IDAHO, a Corporation, Plaintiff, Respondent and Cross-appellant, v. C. E. HALVESTON, Defendant, Appellant and Respondent.

[196 Pac. 217.]

MARRIED WOMEN—RIGHTS TO CONTRACT PRESCRIBED BY STATUTE—NEGOTIABLE NOTE — WHEN FOR HER OWN USE OR BENEFIT OR BENEFIT OF HER SEPARATE ESTATE — RIGHT TO OWN, HOLD OR TRANSFER CORPORATE STOCK—WHEN ESTOPPED TO DENY LIABILITY.

1.  The rights of a married woman to contract have been greatly enlarged by the Idaho statutes, and her rights to contract are prescribed by statute and not by the rules of the common law.

2.  Where a married woman executes her negotiable promissory note and receives the money therefor, and expends the same for her son and for medical attendance upon herself, and subsequently renews the note after it is transferred in `due course to an innocent holder, the obligation will be regarded as having been given for her own use and benefit, or for the use and benefit of her separate estate.

3.  Where a married woman executes her negotiable note in payment of an assessment upon bank stock purchased by her and carried in her name, she will be estopped from setting up the defense that such note was given for a community indebtedness and is therefore void as against her.

4.  Under the constitutional provisions and enabling statutes of this state, a married woman who deals or assumes to deal in respect to matters concerning which her common law disabilities have been removed is bound by an estoppel the same as any other person.

5.  Under C. S., sec. 4731, a married woman may hold, own or transfer stock in a corporation in the same manner as if she

---

1.  On conflict of laws as to capacity of married woman to contract, see notes in 57 L. R. A. 513; 26 L. R. A., N. S., 764, L. R. A. 1916A, 1054.

3.  Estoppel against married women, see note in 57 Am. St. 169.

were unmarried, and will be bound by any contract with reference to such stock that may be necessary to protect her interest in the same, whether such stock be her separate property or community property.

6. In an action against a married woman upon an obligation given by her in connection with corporate stock issued to her and standing on the books of the corporation in her name, neither she nor her husband will be permitted to show that such stock is not the separate property of the wife.

APPEAL from the District Court of the Third Judicial District of the State of Idaho, for Ada County. Hon. Charles P. McCarthy, Judge.

Action in cause numbered 3147 on two promissory notes and in cause numbered 3148 on one promissory note. *Affirmed in part and reversed in part.*

Richard H. Johnson, for Appellant.

All of the notes were given by defendant, a married woman, for obligations which were in no sense her separate debts, and she is not liable therefor. (*Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497, and 14 Ida. 75, 93 Pac. 504, 17 L. R. A., N. S., 676; *McFarland v. Johnson,* 22 Ida. 694, 127 Pac. 911; *Hall v. Johns,* 17 Ida. 224, 105 Pac. 71; *Meier & Frank Co. v. Bruce,* 30 Ida. 732, 168 Pac. 5.)

The doctrine of estoppel does not apply to a married woman in relation to a contract she had no power to make. Where she is under a legal incapacity to contract, she cannot, by her own act, enlarge her capacity to contract, and be estopped even by false representations that she has power to contract. (10 R. C. L. 738, sec. 55; *Bank of America v. Banks,* 101 U. S. 240, 25 L. ed. 850, see, also, Rose's U. S. Notes; *Hass v. American Nat. Bank.* 42 Tex. Civ. App. 167, 94 S. W. 439; 13 R. C. L., sec. 290, p. 1253;

5. Liability of married woman as stockholder, see note in Ann. Cas. 1912C, 400.

21 Cyc. 1343–1348; *Bank of Orofino v. Wellman,* 26 Ida. 425, 143 Pac. 1169; *Steed v. Petty,* 65 Tex. 490.)

Alfred A. Fraser and T. S. Risser, for Cross-appellant.

Where a married woman executes her negotiable note and such note falls into the hands of an innocent purchaser for value, before maturity, such married woman is estopped from setting up any defense to this except that of *non est factum* on the ground of estoppel. (*Perkins v. Rowland,* 69 Ga. 661; *Hibernia Sav. Institute v. Luhn,* 34 S. C. 176, 13 S. E. 357; *McDonald v. Randall,* 139 Cal. 246, 72 Pac. 997.)

"Married women cannot enjoy these enlarged rights of action and of property and remain irresponsible for the ordinary legal and equitable results of their conduct. Incident to this power of married women who deal with others is the capacity to be bound and to be estopped by their conduct, when the enforcement of the principle of estoppel is necessary for the protection of those with whom they deal." (*Dobbin v. Cordiner,* 41 Minn. 165, 16 Am. St. 683, 42 N. W. 870; *Hart v. Church,* 126 Cal. 471, 77 Am. St. 195, 58 Pac. 913.)

The bank was misled by the defendant's representations and in equity she is not now permitted to represent a different state of facts. (*Kirk v. Hamilton,* 102 U. S. 68, 26 L. ed. 79; *Electric Light Co. v. Bristol Gas Co.,* 99 Tenn. 371, 42 S. W. 19; *Dickerson v. Colgrove,* 100 U. S. 578, 25 L. ed. 618; *Brigham Young Trust Co. v. Wagener,* 12 Utah, 1, 40 Pac. 764; *Gregg v. Von Phul,* 1 Wall. (68 U. S.) 274, 17 L. ed. 536, see, also, Rose's U. S. Notes.)

The defendant's husband is also estopped from now claiming that the shares of stock in the plaintiff's bank were community property. One who clothes another with apparent title to personal property cannot claim such property as against the creditors of such person in whose name such property stood. (*Hirsch v. Norton,* 115 Ind. 341, 17 N. E. 612; *Young v. Vough,* 23 N. J. Eq. 325; *Burton's Appeal,*

93 Pa, St. 214; *Russell v. American Bell Tel. Co.*, 180 Mass. 467, 62 N. E. 751; *Larkins v. Cohocksink Bldg. Assn.*, 4 Phil. 95; *Williams v. Walker*, 44 Hun, 628, 9 N. Y. St. 60; Helliwell, Stock and Stockholders, sec. 187; *Cowdrey v. Van Denburg*, 101 U. S. 572, 25 L. ed. 923, see, also, Rose's U. S. Notes.)

LEE, J.—The case numbered in this court 3147 is an action by plaintiff bank against defendant upon two promissory notes. In the first cause of action plaintiff asked judgment against defendant upon a note for $875, and in the second cause of action on a note for $160.

In case numbered in this court 3148 plaintiff asked judgment against defendant on a note for $426. These actions were consolidated and tried together. From an order denying plaintiff judgment on the note for $875 it appeals, and from a judgment against defendant upon a note for $160 in case numbered 3147 and from a judgment against defendant on a note for $426 in case numbered 3148, with costs and attorney's fees in each case, defendant appeals. It is stipulated that both appeals may be heard together.

Defendant is a married woman and during all times herein mentioned she lived and cohabited with her husband, T. F. Halveston, in Boise, Idaho.

All of these notes are renewals of notes given by defendant to the Idaho Trust and Savings Bank. The note for $875 was originally given for an assessment on 25 shares of stock of that corporation which was purchased in 1907, issued to her and carried on the books of the company in her name to the time of making this assessment in 1913. The second note for $160 is a renewal of a note given to the Idaho Trust and Savings Bank for money which she borrowed and gave to her son, Chester Halveston, with which to pay his overdraft at that bank. The third note for $426 is a renewal of a note given by defendant to the Idaho Trust and Savings Bank to take up an overdraft for her son and also for medical attendance upon herself. Plaintiff purchased all of these notes from the Idaho Trust and Sav-

ings bank before maturity, paying value therefor, and without notice of any defect in the title other than that implied by their being given by a married woman.

Defendant asks for an affirmance of the judgment denying plaintiff's right to recover on the $875 note and for a reversal of the judgments against her on the note for $160 and also on the note for $426, for the reason that she was at the time of giving these notes a married woman, living and cohabiting with her husband, and that these notes were given for community indebtedness, and are therefore void, and that she is not estopped from setting up their invalidity against an innocent holder for value.

Plaintiff contends that, under the provisions of C. S., sec. 4665, a married woman may borrow money, give her note therefor, and that her separate property is liable for her debt so created; that the provisions of C. S., sec. 4657, do not cover a case of a woman who is contracting generally, but has reference only to her contractual powers over her separate property; that where a married woman executes her negotiable note, and it falls into the hands of an innocent purchaser, she is estopped from setting up any defense to it except *non est factum;* and that where commercial paper is usurious or otherwise illegal or subject to the defense of fraud or want of failure of consideration, but has come into the hands of a *bona fide* purchaser for value, new paper executed in renewal of the same is valid.

There is no substantial conflict in the evidence. Plaintiff and her husband, T. F. Halveston, have been a marital community for many years, residing at Boise, Idaho. In 1907 officers of the Idaho Trust and Savings Bank sought to induce defendant's husband to purchase 25 shares of its capital stock. He replied that he did not have money enough to buy that amount of stock, but if it was agreeable to his wife the two might buy it. After some negotiations with the bank's officers the wife agreed to purchase the stock and the same was issued to her and carried on the books of the bank in her name, from the time it was purchased in 1907 to the time this assessment was levied against the stock,

for which she gave her note of $875 in 1913. Defendant and her husband claim this stock as community property. She further states that they have other community property, in the form of real estate, which is held in her name, but that all of the other property, including their residence in Boise, is her separate property.

The court below held that these two notes for $160 and $426, respectively, represented an indebtedness "contracted for her own use and benefit, or for the use and benefit of her separate estate," and that they were binding upon her. It further held that the note for $875 given for the bank stock assessment was for a community indebtedness, and that the defendant was not liable therefor, and that she was not estopped from denying its validity.

It does not appear that there is any fixed rule which may be relied upon as an unerring guide to determine in all cases where a married woman is sued, when the debt is incurred "for her own use and benefit"; or as to what constitutes such a debt, or when such debt has reference to her separate estate, to such an extent that she makes her separate property liable therefor.

This court, in *Bank of Commerce v. Baldwin,* 14 Ida. 75, 93 Pac. 504, 17 L. R. A., N. S., 676, after quoting with approval from the English cases, at page 86, says: "It will also be noticed that the principle which has been kept uppermost was that the wife received the consideration for the 'promise' or that it inured to the use and benefit of her separate estate. In practically every instance where a decree has been allowed against her estate it has been upon the theory—if not express, then implied—that the obligation was one incurred 'with reference to her separate estate and property.' "

Session Laws of 1903, page 346, repealed sections 2498 and 2499, R. S., which gave the husband the management and control of the wife's separate property and in certain cases provided for her becoming a sole trader. This act also amended section 2495, R. S., and this section as amended is now C. S., secs. 4656 and 4657. The first section defines

what is the separate property of a married woman, and the second provides that during the continuation of marriage the wife has the management, control and absolute power of disposition of her separate property, and may bargain, sell and convey her personal property and may enter into any contract with reference to the same, in the same manner and to the same extent and with like effect as a married man may do with reference to his real and personal property.

In *Bank of Commerce v. Baldwin, supra,* in commenting upon these amendments the court said that it was not the intention of the legislature to permit a married woman to become a surety and guarantor, or to sign accommodation paper or to go bail; that the legislature had said in substance that with reference to the wife's separate property she may enter into contracts in like manner and to the same effect as a married man may in relation to his property, and that when the legislature said that the contracts the wife can enter into are those with reference to her separate property, it evidently intended to grant her all the rights and privileges of contracting that are necessary or essential to the full and complete enjoyment of her separate property, and the rights of management, control and disposition of the same; and further, that a married woman may execute a note in payment of her debts or for goods and wares furnished directly to her, or for necessaries of life; and where property was parted with on the faith of her promise to pay, the contract would be a valid and binding contract against her, but it would not be binding because it was a contract with reference to her property, but because it is a contract to pay *her own debt* for her own use and benefit.

In *Edminston v. Smith,* 13 Ida. 645, 121 Am. St. 294, 92 Pac. 842, 14 L. R. A., N. S., 871, the court says: "Where necessaries are furnished the wife upon her especial contract and on her personal responsibility to pay therefor, she can be held to pay the debt and to that end may be sued as a

*feme sole.* In such case the debt is incurred for her use and benefit.''

The court further says that section 3 of the act of 1903, page 346 (C. S., sec. 6637), permits the wife to sue and be sued the same as a *feme sole,* and that this grants the same right to sue and be sued in an action of law as a suit in equity, and carries with it all the rights of process to collect and enforce judgments and decrees entered therein, and that under our constitution and statutes the wife is a distinct person, and independent legal entity from her husband.

On the question raised by plaintiff that a married woman who executes her negotiable note should be estopped from setting up any defense to the same against an innocent holder who takes it in due course, there is an irreconcilable conflict of authority. However, this conflict, in a measure, is due to the different provisions of the state statutes which have been passed extending and enlarging the contractual rights of married women, and the disposition of some courts to construe these provisions in such a manner as not to remove the disability that existed at common law beyond the strict requirements of the statute. The authorities cited on behalf of defendant in support of her claim, that by reason of her peculiar status, namely, that of a married woman, she cannot be estopped from denying her liability upon any of these notes in question, support such contention. We think, however, many of the cases so holding may be differentiated from the case at bar by reason of the fact that in such jurisdictions the common-law disabilities of a married woman still obtain, to a much greater extent than in this state. It is very evident that where such disabilities do exist, that is, where she remains in a condition of comparative dependence and cannot contract in her own name, or where her legal existence is still merged in that of her husband, and in cases where such disability, as existed at common law, has been modified only by some well-defined specific exception, not materially affecting her

common-law disability, the doctrine of estoppel could have no application as against her.

It is a well-settled rule at common law that "whenever a peculiar status is assigned by law to the members of any particular class of persons, affecting their general position in or with regard to the community, no one belonging to such class can vary by any contract the rights and liabilities incident to this status. If he could, his private agreements would outweigh the law of the land. Coverture constitutes such a status, and one of its incidents at common law was a total disability on the part of a married woman to contract even with the express assent of her husband, and her disability in this respect could not be overcome by any form of acknowledgment or mode of execution. (13 R. C. L., sec. 290, p. 1253, under title of "Husband and Wife"; *Elliott v. Piersal,* 1 Pet. (26 U. S.) 328, 7 L. ed. 164; *Bank v. Partee,* 99 U. S. 325, 25 L. ed. 390, see, also, Rose's U. S. Notes; *Austin v. Davis,* 128 Ind. 472, 25 Am. St. 456, 26 N. E. 890, 12 L. R. A. 120; *Stapleton v. Poynter,* 111 Ky. 264, 98 Am. St. 411, 62 S. W. 730, 53 L. R. A. 784.)

But this same authority in treating of the subject of estoppel, under the subdivision of married women, says:

"In the discussion of the subject of estoppel against married women, little consideration is due to the common-law rule that a married woman, by reason of her inability to contract, is not bound by an estoppel. Under constitutional provisions and enabling statutes, which exist very generally, the common-law disabilities of married women to contract have been removed, and the prevailing doctrine now is, that a married woman who deals or assumes to deal in respect to a matter concerning which her common-law disabilities have been removed is bound by an estoppel the same as any other person." (10 R. C. L., p. 738, sec. 55, under title of "Estoppel"; *Dobbin v. Cordiner,* 41 Minn. 165, 16 Am. St. 683, and note, 42 N. W. 870, 4 L. R. A. 333, and note; *Galbraith v. Lunsford,* 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522, and note; *Wright Lumber Co. v. McCord,* 145 Wis. 93, Ann. Cas. 1912B, 92, 128 N. W. 873, 34

L. R. A., N. S., 762; *Perkins v. Rowland,* 69 Ga. 661; *Hibernian Bank Inst. v. Luhn,* 34 S. C. 176, 13 S. E. 357; *McDonald v. Randall,* 139 Cal. 246, 72 Pac. 997; *Cook v. Walling,* 117 Ind. 9, 10 Am. St. 17, 19 N. E. 532, 2 L. R. A. 769, and note; *O'Brien v. Hilburn,* 9 Tex. 297; *Hart v. Church,* 126 Cal. 471, 77 Am. St. 195, 58 Pac. 910; *Reed v. Morton,* 24 Neb. 760, 8 Am. St. 247, 40 N. W. 282, 1 L. R. A. 736.)

The rights of the married woman to contract have been greatly enlarged by our statute, and her rights to contract are prescribed by the statute and not by the rules of the common law. (*Hall v. Johns,* 17 Ida. 224, 105 Pac. 71.)

A woman in this state may while married sue and be sued in the same manner as if she were single. (C. S., sec. 6637.) If a husband and wife be sued together, the wife may defend in her own right. (C. S., sec. 6638.) C. S., sec. 4656, defines what is the separate property of the wife, and C. S., sec. 4657, gives her the management, control and absolute power of disposition of the same, and authorizes her to enter into contracts with reference to such property. C. S., sec. 4655, makes the separate property of the wife liable for her own debts contracted before or after marriage.

A married woman has, at least potentially, all the civil rights of her husband; she has been fully emancipated as a citizen both by the state and federal constitution, and is eligible to any position which her husband can hold and while the husband is still the head of the family under the Idaho law, and for obvious reasons the managing partner of the community property, these constitute about the only powers held by the husband which are still withheld from the wife. It would therefore seem that most of the restrictions and disabilities placed upon a married woman by the common law have been in this state removed.

In one particular, the facts pertaining to the note given by defendant for $875, with which to pay the assessment upon the bank stock, present a question with reference to her liability that is not presented by the facts relating to the other two notes upon which the trial court held that she

was liable. The note for $875 is a renewal of a note given in 1913 in payment of an assessment upon bank stock which she had taken in her name.

C. S., sec. 4731, provides that: "Shares of stock in corporations, held or owned by a married woman, may be transferred by her, her agent or attorney, without the signature of her husband, in the same manner as if such married woman were a *feme sole.* All dividends payable upon any shares of stock in a corporation held by a married woman, may be paid to such married woman, her agent or attorney, in the same manner as if she were unmarried, and it is not necessary for her husband to join in a receipt therefor; and any proxy or power given by a married woman touching any shares of stock of any corporation, owned by her, is valid and binding, without the signature of her husband, the same as if she were unmarried."

The purpose of this statute is to confer upon a married woman a right to hold, own or control corporate stock as fully as if she were a *feme sole.* It logically follows that a married woman has the right to make any contract with reference to such stock as may be necessary or incidental to such ownership.

Defendant and her husband testify over suitable objection that while she purchased this stock and had it issued to her, it was community property. Apparently she did not disclose this information to the bank when she purchased the stock, or later when she gave her note in payment for an assessment upon it, and the Idaho Trust and Savings Bank transferred this note to plaintiff for value in due course, and subsequently defendant renewed this note without making any claim that it had been given for community indebtedness.

This statute is an additional grant of power to married women. When stock in a corporation is purchased and issued to a married woman, she should be estopped as against the corporation in a transaction with reference thereto to deny that it is her separate property, and in an action brought against her on an obligation given by her in connection with corporate stock, issued to her and standing in her name on

the books of the corporation, neither she nor her husband should be permitted to show that the stock is community property.

Where a married woman executes her negotiable note for an obligation for which under the law she is not permitted to bind herself, such as that of a guarantor or surety for another, or on a bail bond, or for a debt which is clearly a community obligation, her subsequent renewal of such note would not make the obligation any more binding, for the reason that all who deal with her are bound to know of such disability. But the rule is otherwise where representations and circumstances are sufficient to warrant the creditor in believing that the money was to be used for her own use and benefit, or for the use and benefit of her separate estate.

Our statutes have gone far to remove the common-law disability of a married woman. The property held by her at the time of marriage continues to be her separate property. She may during coverture receive, hold, use and enjoy property of all kinds and the rents, issues and profits thereof, and all avails of her contract and industry, free from the control of her husband. She is capable of making contracts by parol or under seal, and is bound by such contracts and responsible for her torts, and her separate property is liable for her debts and torts, to the same extent as as if she were unmarried. Married women cannot enjoy these enlarged rights of action and of property and remain irresponsible for the ordinary legal and equitable results of their contract. Incident to this power of married women to deal with others is the capacity to be bound and estopped by their conduct, and the enforcement of the principle of estoppel is necessary for the protection of those with whom they deal.

The judgment of the court below giving plaintiff judgment upon the notes for $160 and $426, respectively, together with interest, costs and attorney's fees, should be affirmed, and the judgment of the lower court in refusing plaintiff judgment upon the renewal note of $875, given for an assessment upon the bank stock, should be reversed and

remanded for further proceedings in accordance with the views herein expressed, and it is so ordered.

Budge and Dunn, JJ., concur.

McCarthy, J., did not participate in this decision.

Rice, C. J., dissents.

RICE, C. J., Dissenting.—I concur in the affirmance of the judgments upon the notes for $160 and $426, respectively. I am unable to concur in a reversal of the judgment denying relief to the plaintiff in regard to the $875 note. I cannot see that we can reverse the judgment with reference to the $875 note without at least departing from, if not overruling, the law relating to contracts of married women as announced by the former decisions of this court.

C. S., sec. 4731, quoted in the principal opinion, appears to be in conflict with section 4666, in that it gives to a wife the management and control of community corporate stock standing on the books of the corporation in her name. It is not inconsistent with section 4660 which defines community property. I do not think that section 4731 grants power to a married woman to make contracts beyond the express provisions therein contained.