(Nos. 5259, 5260. January 9, 1930.)

BOISE ASSOCIATION OF CREDIT MEN, LTD., a Corporation, Respondent, v. GLENNS FERRY MEAT COMPANY, a Copartnership, HOMER GREER, MILTON DUNN and FRANK ROWE, Defendants, and JULIA ROWE, Appellant.

BOISE ASSOCIATION OF CREDIT MEN, LTD., a Corporation, Respondent, v. GLENNS FERRY MEAT COMPANY, a Copartnership, MILTON DUNN and FRANK ROWE, Defendants, and JULIA ROWE, Appellant.

[283 Pac. 1038.]

L. E. Glennon, for Appellant.

J. P. Pope, for Respondent Boise Association of Credit Men.

VARIAN, J.—Plaintiff brought two actions, upon assigned accounts for goods, wares and merchandise furnished, against Glenns Ferry Meat Company and certain individuals. Appellant's answer denies generally the allegations of every cause of action in each complaint, and, as an affirmative defense, alleges that during all the times mentioned she was the wife of defendant Frank Rowe and living and cohabiting with him as such in the state of Idaho. Defendants Dunn and Glenns Ferry Meat Company each defaulted. The cases were consolidated for trial, and from separate judgments for plaintiff in each case, Julia Rowe appeals. As she alone appeals, it will not be necessary to consider the answers of the other defendants, or the findings and evidence in support thereof. Both appeals were heard together in this court upon the same transcript and briefs.

About April 20, 1926, defendants Homer Greer and M. C. Dunn opened the old Glenns Ferry Meat Company shop at Glenns Ferry, and continued in business under the said trade name until about October 16, 1926, when defendant Frank Rowe became the owner of the business with said Dunn. Appellant, wife of said Rowe, on October 16, 1926, signed the name "Rowe & Dunn, by Mrs. F. A. Rowe," to the following letter that was mailed to each creditor of Glenns Ferry Meat Company:

"Glenn's Ferry, Ida.

"Oct. 16th, 1926.

"Gentlemen:

"The Glenn's Ferry Meat Company, owned by Homer W. Greer is about to sell it business to Frank Rowe, and M. C.

Dunn for the sum of $1600.00 purchasers assuming and agreeing to pay out standing bills, and accounts as a part of the purchase price. The said $1600.00 to be paid in install-ments, as follows:—Cash $250.00:—Nov. 18th. $125.00: Dec. 18th. $125.00:—$25.00 per. week thereafter until the full sum of $1600.00 with interest on deferred payments at 8% per. annum is paid. We are going to carry on the business, and hope this will be satisfactory to all concerned, and hope you will not crowd us on the payments. For we will pay them as fast as we can.

"Yours truly."

Shortly after November 13, 1926, the said defendant Frank Rowe, then in the employ, as locomotive engineer, of the Oregon Short Line Railroad Company, received notice from it calling attention to a transportation rule prohibiting its employees from engaging in other businesses without authority, and requiring him to sever his connection with the Glenns Ferry Meat Company. Thereafter, under date of December 6, 1926, defendant Frank Rowe executed and acknowledged a formal bill of sale to Julia C. Rowe (his wife) conveying to her all the stock, tools, merchandise, slaughter-house, etc., and assigning to her the book accounts of the Glenns Ferry Meat Company, all for the stated con-sideration of $1500 in hand paid. By this writing, not signed by Mrs. Rowe, she "assumes and agrees to pay" all outstanding accounts and obligations and keep her husband harmless against all claims "of any kind or nature."

Under date of February 16, 1927, appellant signed and mailed to each creditor of the Glenns Ferry Meat Company the following letter, viz.:

"Sirs: Enclosed please find check to apply an account of the Glenns Ferry Meat Co.

"Having purchased the interest of M. C. Dunn of said meat co. am now sole owner, and will do the best I can to get accounts paid. As you know this is the dullest time of the year it may be some little time before I get the account

paid in full but as you have been very kind to us will do best I can on account.

"Very truly yours,
"GLENN'S FERRY MEAT CO.
"JULIA ROWE, Owner."

Thereafter, on May 23, 1927, Dunn notified all creditors and took over the entire business of the Glenns Ferry Meat Company. During the entire period covered by the testimony, the business was conducted under the trade name of "Glenns Ferry Meat Company," irrespective of who the owner or owners at the time were.

The bank account was carried in the trade name, and until May 23, 1927, from October 25, 1926, all checks drawn on Glenns Ferry Meat Company's bank account were also signed by Mrs. Rowe, or by Frank Rowe, her husband. In drawing checks, the husband also wrote his wife's name thereon, so that every check drawn during the connection of either Rowe or his wife, carried her name as part of the signature. After sending out the letter dated February 16, 1927, appellant, at various times, ordered and obtained merchandise on credit for Glenns Ferry Meat Company.

Under the provisions of C. S., sec. 4657, a married woman in this state has absolute control of her separate property, and may dispose of it and contract with reference to it in the same manner and to the same extent and with like effect as a *feme sole*. (*Hall v. Johns*, 17 Ida. 224, 105 Pac. 71; *Overland Nat. Bank v. Halveston*, 33 Ida. 489, 196 Pac. 217.) Husband and wife may contract with each other (*Littler v. Jefferis*, 36 Ida. 608, 212 Pac. 866), and when the husband is free from debt he may make her a gift of community property which thereupon becomes her separate property. (*Bank of Orofino v. Wellman*, 26 Ida. 425, 143 Pac. 1169.) A married woman may establish and carry on a business with her own funds, or funds secured on the faith and credit of such business.

It is contended that there is no evidence that appellant ever agreed to pay the accounts involved in these actions.

We think the letter of February 16, 1927, in which she says to each creditor (and incloses a payment on account to one at least), "It may be some little time before I get the account paid in full," and "will do the best I can to get accounts paid," claiming sole ownership and impliedly asking forbearance on the part of the creditor, coupled with the other evidence in the case and the situation of the parties, conclusively shows that appellant did agree to pay the accounts sued on.

It is further contended that appellant, being under coverture, could not be held liable as surety or guarantor for the debts of another, although she might execute a contract to that effect. There is ample evidence to sustain the finding of the trial judge to the effect that appellant, although the wife of defendant Frank Rowe, contracted the obligations (pre-existing and subsequent) for her own use and benefit and for the use and benefit of her separate property.

There is evidence to the effect that appellant purchased the business and effects of the Glenns Ferry Meat Company from her husband at a time when there was certain indebtedness against it incurred by former owners, of which appellant had knowledge, and that the payment of this indebtedness was considered by her as part of the purchase price she was to pay for the said business and property. The bill of sale, the letters signed by her for Rowe & Dunn on October 16, 1926, her letter to creditors dated February 16, 1927, the fact that during all the time after her husband first acquired an interest in the business, as shown by the checks drawn, the bank account was subject to her control, and that she drew checks from time to time to the creditors, knowing to whom and for what the various checks were drawn,—in fact was more or less actively connected with the conduct of the business,—all support the conclusion that she purchased the business for her separate property and assumed the payment of pre-existing debts as part of said purchase price.

It does not appear that any attempt was made by the Rowes to comply with the Bulk Sales Law (C. S.,

secs. 5752–5756) as to giving notice to creditors of the proposed transfer to appellant, etc., and therefore the transfer as to creditors was void. They might either pursue the property, or seek redress from appellant individually. (*Musselman v. Grossman,* 46 Ida. 780, 271 Pac. 462.) The property was at all times subject to the payment of the pre-existing claims, and in agreeing to pay them, as part of the purchase price of the business and property aforesaid, appellant was not merely guaranteeing the payment of the debt of another, as contended, but agreeing to pay a part of the purchase price (the payment or securing thereof being necessary to protect appellant's ownership) of her separate property. The assumption of payment of the pre-existing indebtedness, as well as the indebtedness contracted in the course of business after she became the owner, were contracts in relation to her separate property under C. S., sec. 4657.

It is true that the bill of sale was not placed of record, and appellant and her said husband both testified that there was in fact no consideration paid by her for this business, and she testified that her name was required by the .depositing bank to be on all checks, and the account was handled upon the theory that she should control the disbursement of funds because theretofore everyone connected with the ownership of the business had drawn upon its funds, resulting in the overdrawing of the account; that she sent out the letter of February 16, 1927, to all creditors, all in furtherance of a design to deceive the Oregon Short Line Railroad Company.

Admittedly, none of the creditors were aware of these claims of appellant, who was allowed to continue the business without molestation, obtained further credits, and made payments on account under the guise of sole owner, all with the knowledge and consent of her husband. Under these circumstances, neither appellant nor her husband can now be heard to say, the purpose being to deceive a third party, that she was not in fact the sole owner of the business. (See *Overland Nat. Bank v. Halveston, supra; Sassa-*

man v. Root, 37 Ida. 588, 218 Pac. 374; Chaffe v. Watts, 37 La. Ann. 324; Maher v. Wilson, 50 Hun, 605, 3 N. Y. Supp. 80; Scott v. Conway, 58 N. Y. 619.) It is true she testified that she never saw the bill of sale executed by the husband until after she wrote the letters to creditors assuming indebtedness against Glenns Ferry Meat Company, but she admitted that at that time she had been informed that a bill of sale had been executed. Nor is it material that one creditor, Davis Packing Company, in answer to the letter of October 16, 1926, signed "Rowe and Dunn, By Mrs. F. A. Rowe," replied that they would not accept the new firm and demanded their money. They made no objection on receipt of the letter signed by Mrs. Rowe on February 16, 1927, stating she had become sole owner, and thereafter forbore suing on their account, and extended further credit to her while doing business as Glenns Ferry Meat Company.

Judgments affirmed, with costs to respondent on each appeal.

Givens, C. J., and Budge, T. Bailey Lee and Wm. E. Lee, JJ., concur.